ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -

ABDULRAHMAN EL BAHNASAWY,

           Defendant.

- - - - - - - - - - - - - - - - - - x

16 MAG 3302.

SEALED AFFIRMATION

16 Mag.


U.S. DISTRICT COURT
FILED
MAY 23 2016
S.D. OF N.Y.

        GEORGE D. TURNER hereby affirms, under penalty of perjury and pursuant to 28 U.S.C. § 1746, as follows:

        1.    I am an Assistant United States Attorney in the office of Preet Bharara, United States Attorney for the Southern District of New York, and I am familiar with this matter.

        2.    The defense has consented to the relief requested in the proposed order accompanying this Affirmation.

        3.    As set forth in the attached Complaint, which is incorporated by reference herein, the defendant and his co-conspirators have been plotting over at least the past two months to conduct multiple terrorist attacks in New York City for and in the name of the Islamic State of Iraq and the Levant ("ISIL"). The planned attacks include the detonation of explosive devices in the New York City subway system and Times Square, and shooting civilians on the subway, in Times Square, and at concerts. They have already taken substantial steps in furtherance of the plot, including the

purchases and delivery to the United States of an array of bomb-making components, including approximately 40 pounds of hydrogen peroxide—the primary component of TATP, an explosive that has been used in recent terrorist attacks—as well as Christmas tree lights, batteries, and thermometers.

4.   On Saturday, May 21, 2016, the defendant, who is a resident and citizen of Canada, crossed the border into New York State and traveled to Cranford, New Jersey in preparation for the planned attacks.   At approximately 11:00 p.m., the defendant was arrested pursuant to an arrest warrant signed by the Honorable Barbara Moses, United States Magistrate Judge.   The arrest warrant is based on the attached Complaint, which charges the defendant with the following offenses: (1) conspiracy to use weapons of mass destruction, in violation of 18 U.S.C. § 2332a(a)(2); (2) conspiracy to commit acts of terrorism transcending national boundaries, in violation of 18 U.S.C. § 2332b; (3) conspiracy to bomb a place of public use and public transportation system, in violation of 18 U.S.C. § 2332f; (4) conspiracy to provide material support and resources to terrorists, in violation of 18 U.S.C. § 2339A; (5) provision of material support and resources to terrorists, in violation of 18 U.S.C. § 2339A; (6) conspiracy to provide material support and resources to a designated foreign terrorist organization, namely, ISIL, in violation of 18 U.S.C. § 2339B; and (7) provision of material support and resources

2

to ISIL, in violation of 18 U.S.C. § 2339B.  Following his arrest, the defendant invoked his right to counsel and he is scheduled to be presented on Monday, May 23, 2016.

5.    The defendant's principal co-conspirator, referred to as "CC-1" in the Complaint, currently remains at large in Pakistan. As described in the Complaint, CC-1 is a radicalized U.S. citizen currently residing in Pakistan, who is committed to attacking the United States and killing American citizens.  CC-1 is in direct contact with ISIL representatives in Pakistan and he previously worked with the Taliban.  Over the past month, he has made clear his intention to travel to New York City and participate, with the defendant, in ISIL-endorsed terrorist attacks during the month of Ramadan, which this year spans June 5 through July 5.

6.    If any information regarding the investigation, arrest, or prosecution of the defendant were to become public now, the FBI's ongoing investigation of CC-1 will be compromised, and a man who represents a clear and imminent threat to U.S. national security will almost certainly evade arrest.  Because CC-1 has expressed his intent to travel from Pakistan to New York City as soon as feasible, and ideally by the beginning of Ramadan (i.e., June 5, 2016), the Government seeks to preserve the investigation of CC-1 for the next two weeks (i.e., until June 5, 2016) to allow for a potential arrest of CC-1 if and when he travels to New York City.

3

Accordingly, the Government requests, with the consent of the
defense, that the Court enter an order directing that:   (1) the
Complaint and associated arrest warrant remain under seal for two
weeks or until further order of the Court; (2) the courtroom be closed
for the defendant's presentment on May 23, 2016, with the exception
that the defendant's parents and sister, who were present with the
defendant at the time of his arrest, may attend; (3) the audio
recording and transcript of the defendant's presentment be sealed
for two weeks or until further order of the Court; (4) all docketing
in this case, including of the Complaint, arrest warrant, documents
related to the defendant's presentment, and the transcript of the
defendant's presentment, as well as any docket notes associated with
the foregoing, be delayed for two weeks or until further order of
the Court; and (5) the defendant and defense counsel be prohibited
from disclosing any documents or other information relating to this
case to any third party, including the media, whether orally, through
the Internet, or by any other means, for a period of two weeks or
until further order of the Court.   To ensure that the Court remains
fully informed of the basis for the relief requested, the Government
intends to provide an update to the Court by letter one week from
today as to the status of the investigation of CC-1.   Moreover,
should the Government determine that the investigation of CC-1 has

4

been compromised or otherwise no longer needs to be concealed, the Government will immediately notify the Court.

**CC-1**

7.    As reflected in the attached Complaint, CC-1 is a radicalized U.S. citizen who left the United States for Pakistan, joined ISIL, and is now committed to carrying out large-scale terrorist attacks against Americans, specifically in New York City, not unlike the recent attacks in Paris and Brussels for which ISIL took credit.  *See* Compl. ¶¶ 14, 17.  Before joining ISIL, CC-1 was associated with the Taliban.  *Id.* ¶ 18.  CC-1 is now a member of ISIL and in direct contact with ISIL officials.  *Id.* ¶¶ 17, 31(a).  The username associated with one of his electronic communications accounts is "Kill Kuffars."[1]  *Id.* ¶ 27(b).

8.    Over the past several weeks, CC-1 has communicated explicitly and extensively with an undercover law enforcement agent (the "UC") regarding his hatred of the United States, his desire to kill American civilians, and his plan to participate with the defendant in ISIL-endorsed attacks in New York City during Ramadan. CC-1 was introduced to the UC by the defendant.  *Id.* ¶ 27(a).  During the UC's initial communications with CC-1, on or about May 1, 2016, CC-1 referenced the defendant as a "brother" ("akhi") and stated: "[M]ay Allah grant us success in this opp [operation] I'm mad excited.

---

[1] "Kuffar" is an Arabic term generally meaning "disbelievers."

And may Allah cause great destruction to the filthy kuffars by our hands."[2]  CC-1 has ties to explosives experts in Pakistan, and is arranging to meet with them in furtherance of the planned attacks in New York City.  *Id.* ¶¶ 30(d), 31(a), 34.  CC-1 has advised that because the defendant and the UC are amassing bomb-making ingredients for the planned attacks, they should be ready with guns to confront any inquiring law enforcement officers ("[t]he pigs").  *See id.* ¶ 30(d).

9.    CC-1 has discussed detonating suicide vests, as well as shooting civilians, in the New York City subway system.  For example, on or about May 5, 2016, CC-1 stated:   "I think the subway is perfect. One can get in the train and on the way to the other station we kill all in the train regardless of who and remember do not stop shooting even if u see women or kids. No mercy is rule one."  *Id.* ¶ 30(e).  CC-1 stated that "we can be a 3 man team inshallah," referring to the defendant and the UC.  *Id.* ¶ 30(b).

10.   CC-1 has consistently indicated that he intends to fly from Pakistan to New York City to carry out the attacks as soon as he is able to obtain a plane ticket.  On or about May 1, 2016, CC-1 told the UC, "Inshallah akhi I just need a ticket once it's done I'll be on my way their."  CC-1 later informed the UC that while he

---

[2] As in the Complaint, to the extent this Affirmation includes quotations of communications, those quotations are based on preliminary draft transcriptions, which are subject to change.

did not yet have enough money to buy a ticket from Pakistan to New York, he would "do everything in [his] power to get a ticket," including selling some of his personal property. *Id.* ¶ 31(c). Once he obtains a ticket, CC-1 plans to fly directly from Pakistan to New York City and "meet[] up as soon as I get their." *Id.* ¶ 30(a). CC-1 has indicated that, to the extent possible, he will seek to arrive in New York City before the beginning of Ramadan (i.e., June 5), in order to carry out the attacks during Ramadan. *See id.*

11. On or about May 9, 2016, CC-1 praised Ramzi Yousef, one of the men responsible for the February 1993 bombing of the World Trade Center in New York City, and stated to the UC: "NY Needs to fall. It's a must." *Id.* ¶ 31(b).

## Applicable Law

12. The Sixth Amendment generally requires that criminal court proceedings be open to the public. However, it is well established that a court may validly limit this right to public access if (1) the party seeking the limitation advances an overriding interest that is likely to be prejudiced; (2) the limitation is no broader than necessary; (3) the trial court considers reasonable alternatives; and (4) the court makes findings adequate to support the limitation. *Waller* v. *Georgia*, 467 U.S. 39, 48 (1984). The Second Circuit has held that the qualified right of public access may yield to, among other things, "the danger of impairing law

7

enforcement." *United States* v. *Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (internal quotation marks omitted); *accord United States* v. *Lugosch*, 435 F.3d 110, 120 (2d Cir. 2006); *United States* v. *Smith*, 985 F. Supp. 2d 506 (S.D.N.Y. 2013).

   13. While there is similarly a qualified right of public access to court documents, the Second Circuit has recognized that documents may be filed under seal to, among other things, further ongoing law enforcement efforts. *See United States* v. *Cojab*, 996 F.2d 1404, 1407-09 (2d Cir. 1993); *United States* v. *Haller*, 837 F.2d 84, 88 (2d Cir. 1988); *see also* Fed. R. Crim. P. 49.1(d), (e) & advisory committee note (permitting court to order that a filing be made under seal). The Second Circuit has also recognized that because even the public docketing of sealing applications themselves can be prejudicial, such applications and related docket notes may also be sealed. *See United States* v. *Alcantara*, 396 F.3d 189, 200 n.8 (2d Cir. 2005); *see also In re The Herald Co.*, 734 F.2d 93, 102 (2d Cir. 1984) (recognizing that there may be "extraordinary situations where even the contemporaneous notation in the docket that courtroom closure has been sought or has occurred could create a substantial risk of harm to an individual," such that delayed docketing would be appropriate).

## The Requested Relief Is Necessary to Avoid Compromising an Ongoing Government Investigation of an Imminent Terrorist Threat

14.    There can be no question that CC-1 poses a clear and imminent threat to the national security of the United States.  As a result, despite the defendant's arrest, the investigation of CC-1 remains a top priority for the FBI.  If any information relating to the defendant's arrest becomes public, the FBI's ongoing investigation of CC-1 will be compromised.  The UC has been in contact with CC-1 and the FBI does not believe that the defendant's silence due to his arrest will necessarily rouse the suspicions of CC-1.  As discussed above, CC-1 plans to travel to New York in the coming weeks to carry out large-scale terrorist attacks for and in the name of ISIL.  The FBI intends to arrest CC-1 if and when he arrives in the United States.  If CC-1 learns that his co-conspirator, the defendant, has been arrested, CC-1 will almost certainly abort his planned trip to the United States and the FBI's arrest opportunity will be lost.  It is highly likely, given the nature of the charges against the defendant—involving a terrorist plot against New York City—that the defendant's arrest, if made public, would generate substantial media attention and CC-1 would quickly learn of the arrest.

15.    Such publicity not only would enable CC-1 to remain at large, it would also likely cause CC-1 to alter his profile and

cease communicating with the UC ("go dark"), thereby reducing law enforcement's insight into CC-1's future plans.  The prospect of CC-1 remaining at large is especially alarming because he is a U.S. citizen, which increases his ability to travel freely in the West and to attempt to return to the United States.  Moreover, while CC-1 has plotted to carry out an attack in New York City, he also poses a threat to U.S. interests abroad, including in Pakistan where he resides.  That threat will be heightened if CC-1 learns of the defendant's arrest and concludes that he should act immediately before authorities can find and stop him.  In short, to preserve any chance the FBI may have to arrest CC-1, the defendant's arrest and presentment must remain sealed until CC-1 arrives in the United States.

## The Relief Sought Is No Broader Than Necessary and There Are No Reasonable Alternatives

16.  The requested closure of the courtroom for the defendant's presentment, sealing, and delayed docketing, are necessary to prevent the defendant's arrest from becoming public, and thus compromising the ongoing investigation of CC-1.  There is simply no other way to prevent that information from entering the public sphere.

17.  The relief requested is also appropriately limited, and no broader than necessary to protect the ongoing investigation.

10

First, the Government is seeking courtroom closure only for a single proceeding—the defendant's presentment—and the requested closure is only partial, as the defendant's parents and sister would be permitted to attend.  Second, the proposed order provides that the case will remain sealed and docketing delayed for a limited period of two weeks (or until further order of the Court), and requires the Government to provide an interim update to the Court within one week, or as otherwise directed by the Court, addressing the continuing need, if any, to maintain this case under seal and delay docketing. Third, the proposed order obligates the Government to promptly inform the Court if at any point the Government comes to believe, based on new information or for any other reason, that sealing and delayed docketing is no longer necessary.

11

Case 1:16-cr-00376-RMB   Document 4   Filed 05/23/16   Page 12 of 13

18.   The Government has provided notice of this application to prospective counsel for the defendant, David Patton, Esq., of the Federal Defenders of New York.   Mr. Patton has advised the Government that the defense consents to the Government's application.

Dated: New York, New York
       May 23, 2016

_____
GEORGE D. TURNER
Assistant United States Attorney
Southern District of New York
(212) 637-2562

12

## CERTIFICATE OF SERVICE

The undersigned attorney, duly admitted to practice before this Court, hereby certifies that on May 23, 2016, he served or caused to be served the above Sealed Affirmation of George D. Turner and the accompanying Proposed Order on David Patton, Esq. and Sabrina Shroff, Esq., by electronic mail.

GEORGE D. TURNER
Assistant United States Attorney

13