1

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              16 CR 376 (RMB)

5    ABDULRAHMAN EL BAHNASAWY,

6              Defendant.                      CONFERENCE

7    ------------------------------x

8                                             New York, N.Y.
                                              June 23, 2016
9                                             2:06 p.m.

10

11   Before:

12              HON. RICHARD M. BERMAN,

                                              District Judge
13

14                        APPEARANCES

15

16   PREET BHARARA,
          United States Attorney for the
          Southern District of New York
17   NEGAR TEKEEI
     GEORGE D. TURNER
18        Assistant United States Attorneys

19   FEDERAL DEFENDERS OF NEW YORK
          Attorneys for Defendant
20   SABRINA SHROFF
     CLAY KAMINSKY
21

22   ALSO PRESENT:  ADAM JOHNSON, Supervisory Attorney, BOP

23

24

25

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# 29
DATE FILED: 10/6/2017

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1           (In closed court)

2           THE COURT:  So my recollection is that when we were

3    together on June 16 for the arraignment, there were some

4    additional issues that came up, including the terms and

5    conditions of confinement for Mr. Bahnasawy.. We asked for Adam

6    Johnson, who we all know from the Bureau of Prisons, to join us

7    today to see if he could shed some light on some of these

8    issues.

9           Let me, before we get to Mr. Johnson, start with the

10   government, then with defense counsel, and frame the issue, and

11   then we'll talk -- see what Mr. Johnson can add to it.

12          MS. TEKEEI:  Your Honor, as we understood it, at the

13   end of the last conference, the Court requested Mr. Johnson to

14   be present to address the defendant's conditions of

15   confinement, including his designation to the Special Housing

16   Unit.

17          THE COURT:  And also, I think, whether any mental

18   health services were being afforded him.

19          MS. TEKEEI:  That's correct, your Honor.

20          Since then, the government and defense counsel have,

21   with the Court's permission, provided Mr. Johnson with

22   additional facts and details related to the nature of this

23   case, as well as to the nature of the ongoing investigation, as

24   well as to the nature of the concerns that defense counsel has

25   raised with the Court in various letters related to Mr. El

3

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1    Bahnasawy's conditions of confinement. And so we are here

2    today to discuss those exact conditions of confinement.

3              THE COURT:  Okay.

4              Ms. Shroff, did you want to add anything, any

5    questions you want posed by me?

6              MS. SHROFF:  Yes, your Honor.

7              So first I want to make clear that I don't think the

8    Bureau of Prisons has actually made a designation.  I think

9    what it is is a default designation.  I think to be fair to

10   Mr. Johnson -- and he's one person I would very much like to be

11   fair to, because he has helped our office tremendously and is

12   very responsive -- as I understand it, that is a default

13   designation which is standard for, I would say, everyone who

14   first comes in.

15             The default is you go to the SHU or you go to a

16   holding pattern, and then they make a designation based on

17   certain information that they are given.  So I want to make

18   sure that the Bureau of Prisons, in fact, has the information

19   from which they will be able to make that decision.  If they

20   have actually received all that information or if some of the

21   Bureau of Prison employees are still waiting for that

22   information, then the next step would be have they made a

23   decision.  The third step would be if they made a decision,

24   what that decision is.  And then, of course, if we disagree

25   with that decision, what Mr. Al Bahnasawy's remedies are.

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1          So if I were to frame it, that's how I would frame it.

2          THE COURT:  Okay.

3          MS. SHROFF:  Thank you.

4          THE COURT:  One way or the other, as it were, your

5   client is in the Special Housing Unit now and we are trying to

6   find out -- I think the issue on the table is if that is

7   intentional, so to speak, by the BOP and, I guess, the

8   rationale for it, and from defense counsel's point of view

9   whether he could be or should be somewhere else in the general

10  population, etc.

11         Relatedly -- or not relatedly.  I'm actually equally

12  interested in knowing about the mental health question.

13  Ms. Shroff raised that early on too, said that that was an

14  issue for him and whether the BOP is, can, or will be providing

15  any kind of support in that regard.

16         So do you think you have enough information to be able

17  to address these questions, Mr. Johnson?

18         MR. JOHNSON:  Yes, your Honor, but, as a lawyer, to a

19  certain extent.

20         To address the SHU issue first, sort of walking it

21  back to the beginning when he first arrived, it is true that,

22  ordinarily speaking, when inmates first come into the

23  institution, if we don't have enough information as to the type

24  of inmate they are, whether or not we might have security

25  concerns with their placement, we will ordinarily default to

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1   Special Housing.  It used to be a long time ago that everyone

2   came in through Special Housing; however, now it's more so for

3   special cases, if you will.

4          We didn't have a lot of information on him when he

5   first arrived.  It was actually a weekend, if I recall

6   correctly, as I've got a lot of calls at home trying to make

7   sure that we could do everything we could to get the Federal

8   Defenders in to meet with Mr. Bahnasawy because, again, the

9   institution didn't have a lot of intelligence yet regarding the

10  nature of his charges and other pertinent information that

11  would help steer our decision as far as where to house him.

12         Later in that week he had actually been released

13  briefly to general population.  I believe that was inadvertent

14  by the --

15         THE COURT:  Inadvertent?

16         MR. JOHNSON:  Inadvertent, yes, by the SHU lieutenant

17  as they were doing kick-outs, because we still hadn't had by

18  that point much information at all.  I think it was around that

19  time that we were getting just the bare-bones information as to

20  what his criminal charges were, but no details about those

21  criminal charges.

22         THE COURT:  How long did the general population -- how

23  long did that last?

24         MR. JOHNSON:  It was for just about shy of a day.  It

25  began on the -- I might be getting my dates wrong.  It might

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1    have been the 24th to the 25th of May, but I'd have to

2    double-check.

3         THE COURT:  It is my understanding that there was some

4    sort of incident with respect to Mr. Bahnasawy.  Was that

5    related to general population or was that separate from him?

6         MR. JOHNSON:  That was in a sense.  We had placed him

7    back into Special Housing pending classification.  But around

8    the same time we also then found out that his inmate personal

9    access code, both to his phone, as well as his commissary

10   account, had been compromised.  So in order to learn more about

11   that, we had to also place him under a threat assessment.

12   Because it was our understanding that it was quite possible

13   that the compromising was that someone stole his commissary

14   money; that any effort to investigate that individual could

15   potentially lead back to the information having come from

16   Mr. Bahnasawy, in which case we would need to make -- take

17   steps in order to protect him from the individual who stole the

18   money from him.  Because quite often in prison there's a

19   hierarchy; and, unfortunately, if someone has told on another

20   person, the person tends to want to get revenge.  So the

21   ultimate decision --

22        THE COURT:  Let me understand.

23        So is this a common occurrence, what happened to him?

24        MR. JOHNSON:  It has happened.  I don't know how

25   common it necessarily was to tell if it's a frequent event or

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1   more so.  We are just learning now that there are inmates that

2   preyed on other inmates; and it sounds like this inmate preyed

3   on him when he was in general population.  Again, this is

4   supposition; investigation is still going on.  But all signs

5   are pointing towards this person essentially having robbed him

6   electronically.

7           THE COURT:  This was electronic, this happened?

8           MR. JOHNSON:  Yes.

9           THE COURT:  This was not someone taking physical money

10   and putting it in their pocket?

11           MR. JOHNSON:  That's correct.

12           Since inmates can't have cash inside of the jail, they

13   basically have their own debit accounts.  And those accounts --

14   if they want to purchase items from the commissary, they sign

15   the commissary sheets when they come around weekly, the

16   commissary sheets go -- they're filled, and the amount is

17   deducted from the account, from their account balances.

18           THE COURT:  Did someone hack that account, is that

19   what you're saying?

20           MR. JOHNSON:  It appears to me that someone used his

21   name and the personal access code.  So it wasn't really hacking

22   per se; they actually just took his -- more of almost identity

23   theft.  They took his personal information and entered it on

24   the inmate truancy computer and then tried to put both money

25   onto this other inmate's phone account, as well as started

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1    transferring the money from the account to an outside source.

2              THE COURT:  I see.

3              MR. JOHNSON:  Again, we're still investigating.

4              THE COURT:  An outside source.

5              MR. JOHNSON:  An outside source, that's correct.

6              THE COURT:  Out of the prison?

7              MR. JOHNSON:  That's correct, your Honor.  And since

8    it's an open investigation, I can't go into further detail

9    about it.  But if your Honor would like, I could do so *in*

10   *camera.*

11             THE COURT:  I get it.  No, no, that's fine.

12             So anyway, back to --

13             MR. JOHNSON:  So at that point he was in there both

14   still pending classification, as well as containment for this

15   threat assessment that is ongoing; but I have asked them to do

16   what they can to try and expedite so that issue is no longer an

17   issue in case the administrators are able to make a more

18   informed decision, which I'm sort of jumping ahead, but in

19   answer to --

20             THE COURT:  Wait.

21             Do I understand that -- so his account, that issue is

22   still being investigated or has not been finalized or --

23             MR. JOHNSON:  Correct.  That issue is still being

24   investigated because there are a lot more factors regarding to

25   the prison --

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1          THE COURT:  You don't have to go into anything -- I'm

2  just curious.  That's still an open matter.

3          MR. JOHNSON:  Correct, that is an open matter.

4          THE COURT:  Is that impacting the ultimate designation

5  or designation?

6          MR. JOHNSON:  It is in the sense that we need to

7  identify if there will be any individuals other than the person

8  who stole the money from whom we may need to seek to

9  potentially separate Mr. Bahnasawy for his own protection.

10         THE COURT:  Okay.  So that means that the -- well, I

11  don't want to put words in your mouth.  So the determination of

12  the Bureau of Prisons is that it's appropriate at this point

13  for him to be in SHU; is that right?

14         MR. JOHNSON:  That's correct, your Honor.

15         THE COURT:  Until such time as you -- who decides --.

16         MR. JOHNSON:  Ultimately, the decision is that of the

17  wardens; however, he does it in conjunction with his department

18  heads and other administrators who are experts in the various

19  areas that will help him in making an informed decision.

20         THE COURT:  Are you involved in that?

21         MR. JOHNSON:  Yes, I am, your Honor, for certain

22  cases, yes.

23         THE COURT:  I get it.  Okay.

24         MR. JOHNSON:  I don't know if you want me to address

25  the issue of Ms. Shroff's first question of whether or not the

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1    sealed information could be slightly unsealed for purposes of

2    the warden and the executive staff reviewing it to make a more

3    informed decision as far as the pending classification aspect

4    of his SHU confinement.  The answer is it obviously has not

5    been unsealed and I've kept to the confidentiality agreement

6    and have not provided any further details to the warden or

7    other administrators, associate wardens.

8         THE COURT:  Well, I have an order, a proposed order,

9    and I wanted to have this conference today.  So one thought

10   I -- not thought, but one concern I had was it's a pretty big,

11   wide list.  Obviously if you want me to sign it, if the

12   government and the defense want me to sign it, I'm inclined to

13   do it.  I want to have assurance that when I sign this, that

14   this is secure.

15        So I always have this theory that when one person

16   knows, that means two people know; and when four people know,

17   that often means eight people know.  I must say, I have had a

18   little hesitation.  I would like a little assurance that who

19   would get this information and how I know that it doesn't get

20   compromised, to use a word that's been used here today.  That

21   may not be your call, but that's what I'm concerned about.

22        MR. JOHNSON:  Sure.

23        The more information we have limiting it to those

24   individuals who I mentioned --

25        THE COURT:  How many people are you proposing that

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1    this otherwise sealed information be distributed to?

2            MR. JOHNSON:  I believe I proposed the warden, the two

3    associate wardens, our captain, and Dr. Miller.

4            THE COURT:  That's Dr. Miller as in mental health?

5            MR. JOHNSON:  Yes, your Honor.

6            THE COURT:  We're going to come to that in a minute.

7            MS. TEKEEI:  Your Honor, we think it would make

8    perfect sense for Mr. Johnson to also provide those individuals

9    with a copy of the Court's sealing order and explain to those

10   individuals, as I'm sure he will in very certain terms, how

11   strict that order is and to obey that order.  We have

12   confidence that the officials that he has named can be so

13   instructed and, with Mr. Johnson's good advice, be able to

14   stick to that.

15           THE COURT:  I was going to ask and I am going to ask,

16   so why wouldn't it be adequate for Mr. Johnson, as counsel, to

17   confer with these people?  Does everybody need to have -- I

18   don't know what it is in detail you want everybody to have, why

19   everybody needs to have it.

20           MS. SHROFF:  Your Honor, as a compromise, maybe they

21   could just get the indictment as opposed to the complaint and

22   the indictment, because the indictment is the final charging

23   instrument.  So perhaps if the Court's concern is assuage --

24           THE COURT:  You know what I'm trying to say?

25           MS. SHROFF:  Sure.

1    THE COURT:  You know how it is.

2    MS. SHROFF:  We do, your Honor.  And again,

3    Mr. Bahnasawy's intent is in no way --

4    THE COURT:  No, I know.  I understand that.

5    MS. SHROFF:  Right.

6    So if the indictment -- and I think that is the final

7    charging instrument -- would suffice, then we could limit it

8    further by limiting it to the indictment.

9    MR. JOHNSON:  The only other thing I would ask is if

10   the Court would grant me permission to not exactly disclose why

11   the matter is sealed, but I think something else that the

12   warden will want to consider are some of these timelines that

13   are in play as far as -- I don't know how freely I can discuss

14   what I've read here, but just --

15   THE COURT:  What would the government like to have

16   disclosed --

17   MS. TEKEEI:  Your Honor --

18   THE COURT:  -- in addition to the indictment?

19   MS. TEKEEI:  Thank you, your Honor.

20   We asked the Court for a limited unsealing of both

21   charging instruments, the indictment and the complaint, which

22   sets forth additional facts related to how the investigation --

23   and specifically CC1 -- as well as certain of the letters that

24   were filed to the Court both by defense counsel regarding the

25   defendant's conditions of confinement, and by the government

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1    regarding the necessity for sealing, as well as addressing

2    defense counsel's assertions regarding the defendant's

3    conditions of confinement.   The reason why we ask that those be

4    unsealed for the limited purpose of providing them to

5    Mr. Johnson out of an abundance of caution --

6               THE COURT:   To Mr. Johnson.

7               MS. TEKEEI:   That's correct.

8               -- out of an abundance of caution is so that he would

9    be informed and could inform those he needed to as they

10   continue to make their assessment about the defendant's

11   conditions of confinement and interim or final designation.

12              So we think that the facts that are set forth, both

13   defense counsel's assertions that are set forth, as well as the

14   affirmative facts that are set forth in the indictment and the

15   complaint, are necessary and appropriate for those officials to

16   consider when they are considering the security risks posed by

17   Mr. El Bahnasawy while he is confined at the MCC.

18              THE COURT:   This is what I would like to have done:

19   I'd like this letter rewritten to say who it's going to and

20   what exactly it is.   If you have two letters in mind or four or

21   whatever --

22              MS. SHROFF:   Your Honor, I'm not really clear what the

23   government -- and I want to preface this --

24              THE COURT:   Wait a minute.   Before we get to that, do

25   you know what I mean?   So I would prefer a letter, wherever we

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1   wind up, that says exactly who the people are and what the

2   people are supposed to get so there's no miscue or missed

3   letter or, Oh, I didn't know, or blah, blah, blah.  Do you know

4   what I mean?

5          MS. TEKEEI:  We can certainly do that, your Honor.

6          Just so that Mr. Johnson, who's being very careful, is

7   aware, there is nothing that is in the documents that I just

8   described that we cannot talk about in open court.  We provided

9   him with the redacted versions of those letters regarding

10  sealing that all the parties are aware of the facts, including

11  the Court and defense counsel.

12         THE COURT:  Right.

13         MS. SHROFF:  By "open court" she means closed court.

14  She just said -- she meant in court now, but in a sealed

15  courtroom, right?

16         MS. TEKEEI:  That's correct.  I meant in court now.

17  Thank you, Ms. Shroff.

18         MS. SHROFF:  So here's the thing:  I am perfectly

19  happy with Mr. Johnson getting all my letters, okay.  That's

20  because Mr. Johnson knows all my concerns.  He is the person

21  who helps us.  There is no secret between us and the government

22  that we don't want Mr. Johnson to know about.

23         I want to be clear though, my letters deal with the

24  problems he encountered in SHU.  That is not what I am talking

25  about here, and under no circumstances should that conversation

XG6NVELBC  SEALED DO NOT DOCKET ORIG.  TO BE RETAINED IN CHAMBERS

1   be reframed to whether or not my client is getting adequate

2   treatment in SHU.

3          THE COURT:  Under no circumstances should that be ---

4          MS. SHROFF:  The issue that Mr. Johnson discusses with

5   the AW or the warden, my concern is that the BOP get all the

6   information they need to make a determination as to whether or

7   not and when Mr. Bahnasawy gets out of SHU.

8          THE COURT:  Got it.

9          MS. SHROFF:  Not whether or not he's getting his Halal

10  meal through the slot or whether or not he's getting water or

11. whether or not he's getting the six other things which are

12  referenced in my letters.

13         THE COURT:  I got it.

14         MS. SHROFF:  That's totally different.

15         THE COURT:  You understand that too?

16         MR. JOHNSON:  Yes, your Honor.

17         THE COURT:  Where is the Dr. Miller portion of this?

18

19

20

21

22

23

24

25

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS



XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS



XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS



XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1    THE COURT:  Anything else?

2    MS. SHROFF:  Well, your Honor, I know the Court is

3   going to be -- there's a chunk of period when the Court is not

4   available.

5    THE COURT:  Actually, I'm planning to set a conference

6   next week.  So I can just sort of -- I thought you might

7   suggest that yourself, unless you don't want me to.

8    MS. SHROFF:  No, no.

9    THE COURT:  I thought I would like to see the progress

10   of these issues.

11    And if you, Adam, could come back next week, that

12   would be great.

13    MR. JOHNSON:  Your Honor, I do have to let the Court

14   know I am out of the office from Thursday next week and

15   returning the following Thursday; however, my co-counsel, who's

16   also up to date on a lot of these issues,

17   Ms. Scannell-Vessella, could be available if the Court was

18   planning on having me here on either Thursday or Friday of next

19   week.

20    THE COURT:  I think I'll have it on a day that you're

21   here.

22    MS. SHROFF:  I concur with that, your Honor.

23    THE COURT:  So, number one, if the government could

24   get me a revised letter this afternoon, you could fax it over

25   to me, I'm happy to sign it.  I just want to know who I'm

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1    dealing with and what the document says we've discussed.   And

2    if you want to go over that with Ms. Shroff so that you can

3    submit it to me on consent, as it were, that would be great.

4         MS. TEKEEI:   Thank you, your Honor.

5         Just to be totally clear, the initial request was at

6    defense counsel's request.   We obviously consented to it.   We

7    will speak with Mr. Johnson and clarify the very narrow group

8    of individuals with whom he thinks he needs to share this

9    information in order to make the appropriate decisions, and

10   then also speak with Ms. Shroff and propose the Court with the

11   parties' joint proposal as to this particular limited

12   unsealing.

13        THE COURT:   Okay.

14        (Pause)

15        THE COURT:   I'm going to put it over till Tuesday,

16   actually, the 28th, at 10:30.   My notes would say that

17   continued discussion of the status of designation and also the

18   status of mental health, okay?

19        I think in our existing schedule, by that time I'll

20   have an update on Monday, I think, from the government.   So

21   we'll be further along information-wise; it will be helpful to

22   inform our Tuesday conference.   Okay?

23        MS. TEKEEI:   Yes, your Honor.

24        THE COURT:   Okay.   So we have two open issues for

25   today.   One is Speedy Trial Act.   I forget if we have -- I

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1  think we've only excluded up until today; is that right?

2       MS. TEKEEI:  That's correct, your Honor.

3       The government moves for speedy trial time to be

4  excluded through June 28th, the next conference date.  So the

5  Court is aware, we've provided discovery and will continue to

6  provide discovery to defense counsel and the defendant.  And so

7  this time would be used in order for us to continue to provide

8  that discovery and for defense counsel and the defendant to

9  review it.

10       MS. SHROFF:  Your Honor, we previously asked the

11  government for a plea offer in this case.  So for plea

12  purposes, we are more than happy to exclude time.

13       THE COURT:  Okay.  So I'm going to find under 18,

14  United States Code, Section 3161 that the request for

15  adjournment, joined in by both sides, perhaps for different

16  reasons, but, nevertheless, to June 28 at 10:30 is appropriate

17  and warrants exclusion of the adjourned time from speedy trial

18  calculations.

19       I further find that the exclusion is designed to

20  prevent any possible miscarriage of justice, to facilitate

21  these proceedings, and to guarantee effective representation of

22  and preparation by counsel for both sides.  Thus, the need for

23  exclusion and the ends of justice outweigh the interests of the

24  public and the defendant in a speedy trial pursuant to 18

25  U.S.C., Section 3161(h)(7)(A) and (B).

XG6NVELBC SEALED DO NOT DOCKET ORIG. TO BE RETAINED IN CHAMBERS

1       And we thank you, Mr. Johnson, for coming today,

2  you're very helpful, as always, and look forward to seeing you

3  on Tuesday as well.

4       And then finally, I take it -- is there an application

5  that this proceeding today be sealed as the prior proceedings

6  have been?

7       MS. TEKEEI:  Yes, your Honor.  Thank you.

8       We'd like to just set forth on the record that this

9  proceeding has been conducted in a closed courtroom.  The basis

10  for that closure has been set forth in our prior letters

11  regarding sealing and delayed docketing; namely, the ongoing

12  investigation as described in those letters and as provided for

13  in the Court's June 20th order, all of the filings, the

14  transcripts, and associated docket entries thus far in this

15  case have been sealed and will continue to be sealed until June

16  28th or further order of the Court.

17       THE COURT:  I grant that application.

18       Okay.  I think that's it then.

19       Good to see you all.

20       See you on Tuesday.

21       Thanks.

22              *    *    *

23

24

25