```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

           v.                              16 Cr. 376 (RMB)

ABDULRAHMAN EL BAHNASAWY,

           Defendant.

------------------------------x
                                           New York, N.Y.
                                           June 29, 2016
                                           10:10 A.M.

Before:

               HON. RICHARD M. BERMAN,

                                           District Judge


                      APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
NEGAR TEKEEI
GEORGE TURNER
     Assistant United States Attorney

FEDERAL DEFENDERS OF NEW YORK, INC.
     Attorneys for Defendant
SABRINA SHROFF
CLAY KAMINSKY

Also Present:  ADAM JOHNSON, BOP Supervising Attorney
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# 35
DATE FILED: 10/6/2017

1          THE COURT:  This is our followup conference after our
2    June 23 conference.  My notes indicate that we were going to
3    talk about the status.  Mr. Johnson is here on the designation,
4    and also, I was interested to hear the status of any mental
5    health services that might have been added.  Who wants to go
6    first?
7          MS. TEKEEI:  Thank you, your Honor.  Since our last
8    conference, as the Court is aware, the Court entered a limited
9    unsealing order allowing Mr. Johnson to provide certain
10   specified materials to certain members of the MCC's executive
11   staff in order to assist them in their pending assessment of
12   the defendant's designation.
13         THE COURT:  And that took place, Mr. Johnson?
14         MR. JOHNSON:  Yes, your Honor, it did.  To be clear,
15   when I did present it to the warden, the warden advised that
16   only he would be reviewing it and did not share it further with
17   the other members of the executive staff, so it's just myself
18   and the warden who reviewed the material.
19         THE COURT:  Got it.
20         Sorry.  I didn't mean to interrupt.
21         MS. TEKEEI:  Not at all, your Honor.  And I think
22   Mr. Johnson can speak more specifically to the next update,
23   which is that we understand that the warden made a
24   determination that the defendant will continue to be designated
25   to the special housing unit until July 5th, at which point, if

1  the threat assessment is complete, then he may be designated to
2  general population. I think Mr. Johnson, as I said, may be
3  able to speak more specifically to that, but that is our
4  understanding as to the issue of the defendant's designation.
5           THE COURT: Just as a technical informational matter.
6  So the order is actually broader than the warden implemented,
7  right?
8           MS. TEKEEI: Yes, your Honor.
9           THE COURT: And do we need to rescind any of that
10 order or make any change? It's just a question. I don't know
11 the answer myself, so you might give that some thought, or
12 maybe nothing needs to happen.
13          MS. TEKEEI: We think that the order, as it stands, is
14 fine. We don't think that there needs to be any amendment to
15 that order at this time, especially if any other members of
16 that staff require seeing some of those materials for between
17 now and going forward.
18          THE COURT: Going forward if something were to happen?
19          MS. TEKEEI: Yes, your Honor.
20          THE COURT: Adam, anything you want to add to that?
21          MR. JOHNSON: Certain, your Honor. Just to give you a
22 little bit of insight into the mindset of the warden. The
23 warden reviewed all of the materials --
24
25

XG6TOBAH                                                                4

1           MR. JOHNSON:

2

3           He reviewed all the materials, and he and I spoke

4   about it at length.  While he is concerned about the criminal

5   complaint and the allegations against the defendant, the

6   criminal allegations, the aspect of the limited unsealed

7   material that --

8           THE COURT:  I'm sorry.

9           MR. JOHNSON:  -- of the limited unsealed material that

10  really concerned him was the CC1, and CC1 is something out of

11  the wind until --

12          THE COURT:  I got it.

13          MR. JOHNSON:  -- presumably July 5th.

14          THE COURT:  I got it.

15          MR. JOHNSON:  In order to maintain the security of the

16  institution, as well as the outside, the concern revolved

17  around abilities to communicate.  Which while we can certainly

18  do our best to limit, it's virtually impossible to completely

19  prevent inmates from finding ways to circumvent our

20  communications abilities, which is why the warden felt more

21  comfortable with him remaining at least until July 5th, and/or

22  whenever the threat assessment is complete, which we anticipate

23  hopefully being complete at or around the same time.  So unless

24  any other things come out of nowhere, I foresee Mr. Bahnasawy

25  being released from SHU next week.

XG6TOBAH                                                          5

1              THE COURT:   What about mental health services?











22    THE COURT:  What I would like, since I'm not sure from
23  what you all are saying -- I mean, I am pretty sure -- but I
24  would like to have a report before the 5th as to a status
25  update before you make a change related to a threat assessment.

1   All right?  So I would like to hear, see in writing, that the
2   government believes there is no longer any concern.
3              MS. SHROFF:  Your Honor, I think that's a different
4   threat assessment, though.  The threat assessment that
5   Mr. Johnson is talking about --
6              THE COURT:  No.  I'm talking about the one that he
7   referred to that takes -- you think that's a different one than
8   he's talking about?
9              MS. SHROFF:  I thought that the only --
10             THE COURT:  He was talking about CC1, and that's what
11  I'm talking about, as well.
12             MS. SHROFF:  No.  He's talking about the threat
13  assessment because my client's PIN and PAC number were stolen.
14  That's the internal threat assessment that Mr. Johnson is
15  talking about.
16             MR. JOHNSON:  Because we had the competing interests,
17  if you will, of the two reasons for being in the SHU.  One of
18  them was that threat assessment into his PIN and PAC number and
19  money being stolen --
20             THE COURT:  I got that.  But there's another one,
21  also.
22             MR. JOHNSON:  -- and then as far as the current.
23             THE COURT:  Yes.
24             MR. JOHNSON:  I don't know if I'd clarify that as a
25  threat assessment but more of a security concern.

```
XG6TOBAH                                                        11
```

1              THE COURT:  However you classify it.  So I'd like to
2     know that that's resolved before there is a change in his
3     designation.
4              MS. SHROFF:  Well, your Honor, the government said
5     that they are not going to seek further sealing past July.
6     Right?  They said that clearly in their letter.  Am I confused
7     now?
8              THE COURT:  That is the thrust of that letter, and I
9     have signed an order that takes us to July 5th.  But, you know,
10    circumstances could change.  I assume that that's the normal
11    course.  I would like to know closer to July 5th that
12    circumstances have not changed.
13             MS. SHROFF:  Sure.
14             THE COURT:  You probably would like to know that, as
15    well.
16             MS. SHROFF:  Absolutely.  Because if there is a change
17    again then we would have --
18             THE COURT:  Yes.
19             MS. SHROFF:  But the government is right here.  Maybe
20    they can give us an assessment to where they are on June 29th.
21             THE COURT:  Go ahead.  I was going to say it's
22    probably the same place they were in the most recent
23    communication to me, but if that's wrong, you should let us
24    know.
25             MS. TEKEEI:  That's correct, your Honor.  This is an

1  ongoing dynamic invest. As we said in our letter filed earlier
2  this week, although we don't expect to be seeking continued
3  sealing, there are certainly some exceptional circumstances
4  that might lead to us requesting some amount of limited
5  continued sealing. At this time, we're not aware --
6           THE COURT: Don't foresee it.
7           MS. TEKEEI: -- we don't foresee that and we're not
8  aware of those circumstances, but we can't predict what will
9  happen.
10          THE COURT: I think we're all saying the same thing,
11 Ms. Shroff. I just want to know before there's a change, you
12 know, the latest. So how could we work that out?
13          MS. TEKEEI: So, your Honor, we can certainly provide
14 the Court with an update closer to July 5th. We propose, given
15 that today is Wednesday, perhaps on Monday, July 4th, to
16 provide the Court with an update, and we can certainly email
17 that to the Court so, to the extent that the update can be
18 passed over email, we can certainly provide the Court and
19 counsel with an update on July 4th.
20          MS. SHROFF: And the BOP.
21          MS. TEKEEI: Sure.
22          THE COURT: So that would be an email on July 4th?
23          MS. TEKEEI: Yes.
24          THE COURT: It could also be July 5th, which is a
25 business -- I'll read it on July 4th, as well, but I wonder if

1   it doesn't make more sense to be on July 5th.
2           MS. TEKEEI:  Our preference would be July 5th, your
3   Honor.  I wasn't sure how far in advance of July 5th --
4           THE COURT:  Could be in the morning.  By noon, let's
5   say.
6           MS. TEKEEI:  That's great.  We can do that.
7           THE COURT:  Ms. Shroff, is that okay with you?
8           MS. SHROFF:  It's fine, your Honor.
9           THE COURT:  Seems to me it makes more sense to be --
10          MS. SHROFF:  You know what?  It's fine.
11          THE COURT:  Okay.  So by noon on July 5th.
12          MS. SHROFF:  That's fine.  Your Honor, again, I want
13  to stress what I've said before.  Any concerns that the
14  government, or the warden, or anybody has about any discussions
15  about this government's ongoing investigation, even
16  Mr. Bahnasawy's parents, who are aware of the situation, are
17  not subject to a protective order, have done nothing untoward
18  or in any way disclosed even a single detail about the
19  situation.  And again, Mr. Bahnasawy's only concern is how he's
20  able to handle the SHU.
21          I also want to let the Court know that, given his age
22  and his very special mental health and other issues,
23  Mr. Bahnasawy is one of the few clients that, in all my years,
24  I have made sure to visit every single day at the MCC.  So
25  somebody from my office has seen Mr. Bahnasawy every single

XG6TOBAH                                                           14

1  day, whether it be a Saturday or a Sunday or a holiday, and
2  that, of course, will continue through the Fourth of July
3  weekend.
4           We just want the Court to know that there is no
5  posturing here, we are genuinely concerned, and we are also
6  making every effort we can to ensure that everything moves
7  along smoothly.
8           THE COURT:  Yes.  I, for one, just to tell you, never
9  had any -- not an ounce of doubt that there's posturing going
10 on.  I thought it was -- I think and thought your concerns were
11 genuine and appropriate.
12          MS. SHROFF:  Thank you, your Honor.
13          THE COURT:  Then let me give you another date in the
14 following week for another conference would be.  How about
15 July 12 at 11:30?  Can you all make that?
16          MS. TEKEEI:  Yes, your Honor.
17          MS. SHROFF:  That's fine, your Honor.
18          THE COURT:  I forget if we have or need a speedy trial
19 exclusion that takes us to that date, but is there an
20 application in that connection?
21          MS. TEKEEI:  Yes, your Honor.  The government moves to
22 exclude speedy trial time until July 12th.  We provided defense
23 and the defendant with discovery.  We plan to make another
24 production sometime around the middle of next week.  Our
25 request would be, so that the government can continue to

1   provide discovery to the defendant and the defense counsel, and
2   so that defense counsel can review that discovery.
3           MS. SHROFF:  Your Honor, I want to just tell the
4   Court, I received discovery.  The discovery consists of
5   800 pages of phone records and very little of anything else.  I
6   asked the government when they were going to augment this
7   production so that we may actually review discovery.  I'm not
8   sure why we're waiting until next week, but that's fine.
9           I cannot exclude time because we're reviewing
10  discovery, but I certainly have asked the government to
11  consider and engage in plea discussions.  So for those reasons,
12  I suppose the Court could find that an order of exclusion is
13  appropriate.
14          THE COURT:  You have an objection.  No, I'll note the
15  objection.  I think that's not a problem.
16          I do find under 18 United States Code, Section 3161,
17  that the request for adjournment, actually at my behest, and
18  both parties seem to feel that another conference is
19  appropriate.  It also warrants exclusion of the adjourned time
20  from speedy trial calculations.  I further find that the
21  exclusion is designed to prevent any possible miscarriage of
22  justice, to facilitate these proceedings, and to guarantee
23  effective representation of and preparation by counsel for both
24  parties.  Thus, the need for exclusion, and the ends of justice
25  outweigh the interests of the public and the defendant in a

1   speedy trial pursuant to 18 U.S.C., Section 3161(h)(7)(A) and
2   (b).
3           If I could impose on you one more time, at least,
4   Mr. Johnson, could you make that July 12th conference, as well?
5           MR. JOHNSON:  I believe I can, your Honor.  I did have
6   one question about the update for the 5th.  Am I to understand
7   that the update on the 5th is not sealed?  So for purposes of
8   notifying the warden and, since I'll be absent, my cocounsel.
9           THE COURT:  I don't know whether we know that at this
10  time whether the update on the 5th is a sealed communication or
11  not.  Do we?  I don't know how we could know that.
12          MS. SHROFF:  Your Honor, even if it's sealed, the
13  order would still apply.  Right?  It would be an unlimited
14  unsealing for Mr. Johnson and the warden and hopefully that
15  will --
16          THE COURT:  Is that further submission covered by the
17  order?  I don't recall.
18          MS. TEKEEI:  Your Honor, to the extent it isn't, in
19  our update letter we will make that explicit in order to allow
20  Mr. Johnson to share that information.
21          THE COURT:  If you want to make that letter room for
22  so ordered, that might be the easiest way to do it.
23          MS. TEKEEI:  That's great.  We'll do that.
24          MR. JOHNSON:  Your Honor, I was also go to ask for a
25  possibility of an unsealing, because I'll also be out of town

XG6TOBAH                                                             17

1  until Thursday next week, but my cocounsel will be handling all
2  the legal matters for MCC during that time.  I didn't know if
3  you wanted to unseal for her or if you just wanted me to find a
4  way to have that sent directly to the warden while I was out of
5  town.
6           THE COURT:  I think the latter.  I don't know your
7  cocounsel.
8           MS. TEKEEI:  We can certainly provide -- to the extent
9  that there are materials to provide to the warden, we can
10 certainly provide it to him directly, and we'll make room for
11 that in the request in the letter.
12          THE COURT:  In the scheme of things, I think it's
13 sensible to narrow the recipient list, at least for now.
14          MR. JOHNSON:  Thank you.
15          THE COURT:  Anything else from the government?
16          MS. TEKEEI:  Yes, your Honor.  We'd just like to note
17 for the record that this proceeding has been conducted in a
18 closed courtroom.  The basis for that closure has been set
19 forth in our letters regarding sealing and delayed docketing;
20 namely, the ongoing investigation.  As provided for in the
21 Court's June 27th order, all the filings, the transcripts and
22 associated docket entries continue to be sealed until July 5th.
23          THE COURT:  Anything from you?
24          MR. JOHNSON:  Nothing further, your Honor.  Thank you.
25          THE COURT:  Ms. Shroff?

```
XG6TOBAH                                                          18
```

1    MS. SHROFF:  No, your Honor.  Thank you.

2    THE COURT:  I'll see everybody again on the 12th of

3  July, and I'll hear from the government by noon on the 5th of

4  July.

5    MS. TEKEEI:  Yes.  Thank you, your Honor.

6    THE COURT:  Good to see you all.

7    (Adjourned)