USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# 47
DATE FILED: 10/6/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

v.

16 CR 376 (RMB)

ABDULRAHMAN EL BAHNASAWY,

Defendant.

------------------------------x

New York, N.Y.
October 13, 2016
2:30 p.m.

Before:

HON. RICHARD M. BERMAN,

District Judge

APPEARANCES

PREET BHARARA,
United States Attorney for the
Southern District of New York
NEGAR TEKEEI
GEORGE TURNER
Assistant United States Attorney

CLAY HUBBARD KAMINSKY
SABRINA SHROFF
Attorneys for Defendant

(Case called)

THE COURT: If it's okay with all of you, I think we should start by Ms. Murray swearing in Mr. El Bahnasawy.

(Defendant sworn)

THE COURT: Mr. El Bahnasawy, you understand that having been sworn, and, answering under oath, your answers to my questions must be truthful and could subject you to the criminal penalties of perjury or of making false statement if you do not answer truthfully?

THE DEFENDANT: Yes.

THE COURT: Do you realize that?

THE DEFENDANT: Yes.

THE COURT: There are a series of documents that we have here. First of all, maybe we should start with the document called "Notice Of Intent To File An Information." It's dated October 13, and it's signed by the government and Ms. Shroff and Mr. El Bahnasawy, I believe -- or is it just you, Ms. Shroff, on behalf of Mr. El Bahnasawy? Is that both of your signatures?

MS. SHROFF: I think it's just counsel's signature.

THE COURT: Okay.

I'm going to hand it back to you. Is it both of you? Is that intended to be both defense counsel?

MS. SHROFF: Yes, your Honor.

THE COURT: I gotcha.

Then I have a document that is signed by Mr. El Bahnasawy and counsel. That is a document called "Waiver Of Indictment." And in that document, Mr. El Bahnasawy waives his right to be prosecuted pursuant to an indictment and consents to proceeding by information instead of indictment.

Is that your understanding, Ms. Shroff, of that document, waiver of indictment?

MS. SHROFF: Yes, your Honor.

THE COURT: Did you understand and discuss that, Mr. El Bahnasawy, with Ms. Shroff before you signed it?

THE DEFENDANT: With Clay.

THE COURT: Could you for the record state your full name.

MR. KAMINSKY: Yes, your Honor. Clay Kaminsky.

THE COURT: And, Clay Kaminsky, you are co-counsel with Ms. Shroff to Mr. El Bahnasawy?

MR. KAMINSKY: That's correct, your Honor; also with the Federal Defenders.

THE COURT: Great.

And you understand the implications, Mr. El Bahnasawy, do you, having discussed that with Mr. Kaminsky, the implications of waiving your right to an indictment?

THE DEFENDANT: Yeah, I -- which one is that?

THE COURT: I've got to hear you.

THE DEFENDANT: Oh, yes, yes.

THE COURT: You do? Okay.

Then the third document that I have is called "Sealed Superseding Information." I want to make sure, first of all, that counsel has received that information.

MS. SHROFF: We have, your Honor.

THE COURT: Did you discuss it with Mr. El Bahnasawy?

MS. SHROFF: We did, your Honor.

THE COURT: Did you want me to read it at this time?

MS. SHROFF: Mr. El Bahnasawy does not wish it to be read out loud to him in court.

THE COURT: In terms of a plea, I think that what we're here about today indicates that Mr. El Bahnasawy wishes to enter a plea of guilty, is that right, to that document?

THE DEFENDANT: Yes.

THE COURT: And, Ms. Shroff, could you confirm that?

MS. SHROFF: I do confirm that, your Honor. Mr. El Bahnasawy has informed us that he wishes to withdraw his previously entered plea of not guilty and enter a plea of guilty

THE COURT: Right. But just sort of technically, just with respect to the superseding information, there is no plea before today's plea of guilty; is that right?

MS. SHROFF: Not as to the superseding information,

your Honor, just to the original indictment.

THE COURT: Right, okay.

Then the next document is, of course, the plea agreement. It's dated October 11, 2016, on the front page and appears to be signed and dated by Mr. El Bahnasawy and also counsel, Ms. Shroff and Mr. Kaminsky, yesterday, October 12, 2016.

So, first, for counsel: Did you carefully review that plea agreement with Mr. El Bahnasawy before you all signed it and he signed it as well?

MS. SHROFF: Yes, your Honor.

THE COURT: And, Mr. El Bahnasawy, you went over that plea agreement carefully with your attorneys before you signed it yesterday?

THE DEFENDANT: Yes.

THE COURT: Then we have a document called "Advice Of Rights Form," which is a form that I use in connection with guilty pleas. This one is signed with today's date, October 13, both by co-defense counsel and Mr. El Bahnasawy.

So, Counsel, first, did you carefully go over the Advice of Rights Form, which advises people of some of the rights they will be giving up by pleading guilty, Ms. Shroff or Mr. Kaminsky?

MR. KAMINSKY: Yes, your Honor, I went over it with him.

THE COURT: And, Mr. El Bahnasawy, you went over that form carefully with Mr. Kaminsky and/or Ms. Shroff before you signed it?

THE DEFENDANT: Yes.

THE COURT: Okay.

So, it's clear from these preliminary questions that I've asked and these documents, which will be made court exhibits to today's proceeding, Ms. Shroff and Mr. Kaminsky, that Mr. El Bahnasawy wishes to enter a plea of guilty to the superseding information. Do I understand that correctly?

MS. SHROFF: Yes, your Honor.

THE COURT: Mr. El Bahnasawy, before I can accept that plea, which is happening in this proceeding, I'm going to ask you a series of questions to make sure and to be able to establish that you wish to plead guilty and that you do so voluntarily and knowingly, and because you are guilty, and also to establish that you know just what rights you'll be giving up by pleading guilty.

So, if you don't understand any of my questions or if at any time you wish to consult with counsel for any reason, please say so, and I will give you as much time as you need to consult with your attorneys, because it's essential to a valid plea that you understand each question before you answer it. Is that okay with you?

THE DEFENDANT: Yes.

THE COURT: I'll just start by asking you again, Mr. El Bahnasawy, is it your wish and intention to enter a guilty plea this afternoon in this proceeding to the superseding information?

THE DEFENDANT: Yes, it is.

THE COURT: Could you tell us your full name.

THE DEFENDANT: Abdulrahman El Bahnasawy.

THE COURT: And you are how old?

THE DEFENDANT: Eighteen.

THE COURT: And you are a citizen of what country?

THE DEFENDANT: Canada.

THE COURT: Were you born in Canada? I don't remember.

THE DEFENDANT: No, I'm born in Kuwait.

THE COURT: And you have lived in Canada for how long?

THE DEFENDANT: About ten or eleven years.

THE COURT: How far did you go in school?

THE DEFENDANT: Until grade 11.

THE COURT: Was that in Canada or in Kuwait?

THE DEFENDANT: From grade one was in Kuwait, Canada was -- like half was in Kuwait and half was in Canada, so grade one was in Kuwait, in Canada it was from grade two to eight, and then nine and ten was in Kuwait, and then I went back to Canada for 11 but I didn't finish 11.

THE COURT: I see, okay. So you went back and forth

then?

THE DEFENDANT: Yes.

THE COURT: First, from Kuwait to Canada, and then from Canada to Kuwait, and then back from Kuwait to Canada?

THE DEFENDANT: Yes.

THE COURT: That's where your residence is now, it's Canadian?

THE DEFENDANT: Yes.

THE COURT: Is your family there as well?

THE DEFENDANT: Yes, it is.

THE COURT: Which consists of?

THE DEFENDANT: My dad, my mom, and my sister.

THE COURT: The three of them live in Canada?

THE DEFENDANT: Yes.

THE COURT: Are you now, or have you recently been, under the care of a medical doctor? I think we've discussed that in previous conferences.

9

XGADKELBP SEALED -- DO NOT DOCKET

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

THE COURT: Have you taken any drugs or medicine or pills or drunk any alcoholic beverages in the past 24 hours?

THE DEFENDANT: No.

THE COURT: Anything that might affect your answers to my questions?

THE DEFENDANT: No.

THE COURT: Or your frame of mind here today in court?

THE DEFENDANT: No.

THE COURT: So, I asked this before but I'm going to ask again: How do you feel today physically?

THE DEFENDANT: I feel well.

THE COURT: And mentally?

THE DEFENDANT: Also well.

THE COURT: And you understand what is happening in this proceeding here in court today, do you?

THE DEFENDANT: Yes.

THE COURT: Here's a question for the lawyers: Do either of you -- that is to say, the government or the defense -- have any doubts or concerns as to Mr. El Bahnasawy's competence to plead at this time?

MR. TURNER: No, your Honor.

MS. SHROFF: No, your Honor.

THE COURT: Neither do I. Based on the record today,

including Mr. El Bahnasawy's answers to my questions, his testimony, I find that he is competent to plead guilty.

Mr. El Bahnasawy, have you been given a full opportunity to discuss all aspects of this case with your attorneys?

THE DEFENDANT: Yes.

THE COURT: Including possible defenses that you might have to the charges in the superseding information to which you have offered to plead guilty?

THE DEFENDANT: Yes.

THE COURT: Are you fully satisfied with your counsel's representation of you?

THE DEFENDANT: Yes, I am.

THE COURT: That's Ms. Shroff and Mr. Kaminsky?

THE DEFENDANT: Yes.

THE COURT: Are you fully satisfied with the legal advice that they each have given you?

THE DEFENDANT: Yes, I am.

THE COURT: Ms. Shroff and Mr. Kaminsky?

THE DEFENDANT: Yes.

THE COURT: So, now I'm going to explain certain rights that you have and ask some questions about those.

First, since we have here what's called an information, we also had what's called a waiver of indictment written and I just want to make sure that you and counsel are

waiving indictment. It's obviously clear from these documents but just so the record is clear, Ms. Shroff, you and your client are waiving indictment?

MS. SHROFF: We are, your Honor. We're proceeding by the information.

THE COURT: And, Mr. Kaminsky, you're onboard with that too?

MR. KAMINSKY: Yes, your Honor.

THE COURT: And, Mr. El Bahnasawy, is that your ~~contention~~ intention here today?

THE DEFENDANT: Yes, it is.

THE COURT: And you realize that what that means is, simplifying somewhat, but by offering to plead guilty to an information, do you realize that you had the right to have the evidence in this case underlying the charges presented to a grand jury and to have those grand jurors decide whether there was probable cause that you should be charged? Do you realize that?

THE DEFENDANT: Yes, I do.

THE COURT: Do you realize that by signing this waiver of indictment, which you've done, you gave up the right and permitted the government to file this information based only on the signature of the United States Attorney?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you have the right

to plead not guilty today if you wish?

THE DEFENDANT: Yes, I do.

THE COURT: Under the Constitution and laws of the United States, if you plead not guilty, you would be entitled to a speedy and public trial by a jury on the charges contained in the superseding information. Do you realize that?

THE DEFENDANT: Yes, I do.

THE COURT: If you decided to have a trial, at the trial you would be presumed to be innocent; the government would be required to prove that you were guilty by competent evidence and beyond a reasonable doubt before you could be found guilty.

THE DEFENDANT: Yes.

THE COURT: A jury would have to agree unanimously that you were guilty. Do you realize that?

THE DEFENDANT: Yes.

THE COURT: And you would not have to prove that you were innocent. Do you realize all of those rights?

THE DEFENDANT: Yes, I do.

THE COURT: Also, at a trial, if you decided to have one, and at every stage of your case, you would be entitled to be represented by counsel, as you are today, and have been throughout these proceedings. And if you could not afford counsel, one would be appointed at public expense to represent you. Do you realize that?

THE DEFENDANT: Yes, I do.

THE COURT: Also, during a trial, if you decided to have one, the witnesses for the government would have to come to court and testify in your presence. Do you realize that?

THE DEFENDANT: Yes.

THE COURT: And your lawyers could cross-examine the witnesses for the government. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And they could object to evidence offered by the government. Do you realize that?

THE DEFENDANT: Yes.

THE COURT: And they could offer evidence and subpoena witnesses on your behalf. Do you realize that too?

THE DEFENDANT: Yes, I do.

THE COURT: Also, at a trial, if you decided to have one, although you would have the right to testify if you chose to do so, you would also have the right not to testify, and no one, including particularly the jury, could draw any inference or suggestion of guilt from the fact that you did not testify, if that's what you elected to do. Do you realize that?

THE DEFENDANT: Yes.

THE COURT: Even now, this afternoon, as you are entering this guilty plea, you still have the right to change your mind and to plead not guilty and to go to trial on the charges contained in this superseding information. Do you

understand that?

THE DEFENDANT: Yes.

THE COURT: If you do plead guilty and if I accept your guilty plea, then you will give up your right to have a trial and the other rights that I have been discussing with you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And there won't be any trial, there will no trial, but I'll still enter a judgment of guilty against you. Do you realize that?

THE DEFENDANT: Yes, I do.

THE COURT: And I will thereafter -- not today, sometime in the future -- sentence you on the basis of your plea, after I have considered what we call a presentence investigation report, which will include what's called a sentencing guidelines analysis and whatever submissions that I may get from your attorneys and from the government. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Some of these questions are a little bit repetitive but it's worth taking the time and going over them.

You have received a copy of the superseding information, which I mentioned earlier, which contains the charges against you; is that right?

THE DEFENDANT: Yes, yes, I did.

THE COURT: And you discussed fully with your counsel the charges in this superseding information, to which you intend to plead guilty?

THE DEFENDANT: Yes.

THE COURT: Again, are you fully satisfied with Ms. Shroff and Mr. Kaminsky's legal representation of you?

THE DEFENDANT: Yes, I am.

THE COURT: Are you fully satisfied with the legal advice that they have given to you?

THE DEFENDANT: Yes.

THE COURT: So, now I'm going to briefly summarize the counts in this superseding information. I will then give counsel a chance to add to those summaries if they wish.

Count One may be characterized as charging him with a conspiracy to use a weapon of mass destruction. It says that from at least in or about early 2016, up to and including May 21, 2016, in the Southern District of New York and elsewhere; Mr. El Bahnasawy and others, acting without lawful authority, conspired to use a weapon of mass destruction, in particular, an explosive bomb and similar device, against persons and property within the United States.

In addition, within the United States, these features were part of that conspiracy: Use of the mail and facilities of interstate and foreign commerce, including mobile telephones, were used in furtherance of the offense charged in

Count One; also, such property was used in an activity that affects interstate and foreign commerce, and a perpetrator involved in this conspiracy traveled in, and caused another to travel in, interstate and foreign commerce in furtherance of the conspiracy; and, fourth, the offense and the results of the offense would have affected interstate and foreign commerce.

So, that's the summary of Count One. If anybody wishes to add -- I should mention that the superseding information speaks for itself in its entirety. My efforts to summarize them are just that, efforts to summarize, but the superseding information in its entirety is incorporated into this proceeding. But if counsel for the government wants to add anything to Count One, I'm happy to hear you.

MR. TURNER: Your Honor, we are prepared, of course, to set forth the elements of each of the counts, which we --

THE COURT: That will come later.

MR. TURNER: At a later time?

Nothing to add to the Court's summary, your Honor.

THE COURT: How about Ms. Shroff?

MS. SHROFF: No, thank you.

THE COURT: So then let's move on to Count Two.

This is another conspiracy charge, a second conspiracy, and it's a conspiracy to commit acts of terrorism transcending national boundaries. It, in summary, charges that, from at least in or about early 2016 up to and including

on or about May 21, 2016, in the Southern District of New York, the defendant, Mr. El Bahnasawy, and others conspired in an offense involving conduct transcending national boundaries. And they conspired to kill, maim, commit an assault resulting in serious bodily injury and assault with a dangerous weapon, persons within the United States and they conspired to create a substantial risk of serious bodily injury to another person by destroying and damaging a structure, conveyance and other real or personal property within the United States, in violation of 18, U.S.C., Section 2332(a), which describes the use of a weapon of mass destruction, and also in violation of 18, U.S.C. Section 2332(f), which relates to bombing a place of public use and public transportation, facilities, and also involved in this second conspiracy, the mail and facilities of interstate and foreign commerce, including mobile telephones, which were used in furtherance of the offense and also the offense and the results of the offense would have affected interstate and foreign commerce.

So, that's Count Two. If the government would care to add to that summary, you're welcome to do so.

MR. TURNER: No, your Honor.

THE COURT: Or the defense?

MS. SHROFF: No, thank you.

THE COURT: Okay.

Count Three is another conspiracy. This one is a

conspiracy to bomb a place of public use and public transportation system. It says that from in or about early 2016 up to and including on or about May 21, in the Southern District of New York, the defendant, Mr. El Bahnasawy, and others did knowingly and unlawfully conspire -- by the way, the phrase "knowingly and unlawfully" modifies all of the conspiracies I'm talking about today -- they did knowingly and unlawfully conspire to deliver and detonate an explosive or other lethal device in a place of public use and a public transportation system with the intent to cause extensive destruction of such place and system and with the intent to cause death and serious bodily injury and where the destruction was likely to result in a major economic loss. And the offense took place in the United States, and a perpetrator is a national of another state, and the offense also took place outside the United States, and the perpetrator is found in the United States.

Would you like to comment or add to Count Three, starting with the government?

MR. TURNER: Nothing to add, your Honor.

THE COURT: Ms. Shroff?

MS. SHROFF: No, your Honor. Thank you.

THE COURT: Count Four is another conspiracy, summarized as a conspiracy to provide material support to terrorists. And Count Four says that from at least in or about

early 2016 up to and including on or about May 21, 2016, in the Southern District of New York and elsewhere, the defendant, Mr. El Bahnasawy, and others knowingly and intentionally conspired to provide material support or resources, as defined in 18, U.S.C., Section 2339A(b) looks like little i in parens, namely, property services and personnel, including himself, and to conceal and disguise the nature, location and source and ownership of material support and resources, knowing and intending that they were to be used in preparation for, and in carrying out, a violation of the law, Section 2332a, that I referred to a minute ago, involving the use of weapons of mass destruction, and 2332b, which I referred to a minute ago, relating to acts of terrorism transcending national boundaries and Section 2332f, bombing a place of public use and public transportation facilities.

The information goes on to say, with respect to Count Four, that it was a part and object of this conspiracy that the defendant and others would and did knowingly and intentionally provide, and attempt to provide, material support or resources, as defined at 18, United States Code, Section 2339A(b)(1), and to conceal and disguise the nature, location, source and ownership of material support and resources knowing and intending that they were to be used in preparation for, and in carrying out, a violation of the section relating to use of weapons of mass destruction and the section of the statute

relating to acts of terrorism transcending national boundaries, and the section of the statute relating to bombing of places of public use a public transportation.

So, that's Count Four. The government is welcome to add to that summary if you wish.

MR. TURNER: No, thank you, your Honor.

THE COURT: How about the defense?

MS. SHROFF: No, thank you.

THE COURT: Okay.

Count Five: I should have mentioned before, there are seven counts in total but Count Five is not a conspiracy count, it's what we call a substantive count or a substantive offense, and it is the offense of providing material support to terrorists. It says, in summary, that from at least in or about early 2016, up to and including in or about May 21, 2016, Mr. El Bahnasawy did knowingly and intentionally provide material support or resources and concealed and disguised the nature, location, source and ownership of material support and resources, knowing and intending that they were to be used in preparation for, and in carrying out, a violation of the section of law I referred to before involving the use of weapons of mass destruction and the other section involving acts of terrorism transcending national boundaries and the section of the law, Section 2332f, relating to bombing of places of public use and public transportation, which fall

under Title 18.

Anybody want to add to the description the summary description of Count Five?

MR. TURNER: No, your Honor.

MS. SHROFF: No, thank you.

THE COURT: Okay.

Count Six is another conspiracy count. It could be described as conspiracy to provide material support and resources to designated foreign terrorist organization. Count Six says that from at least in or about early 2016 up to and including on or about May 21, 2016, in the Southern District of New York, Mr. El Bahnasawy, together with others known and unknown, did knowingly and intentionally conspire to provide material support or resources to a foreign terrorist organization, namely, ISIL, I-S-I-L, which is shorthand for Islamic State of Iraq and the Levant, L-e-v-a-n-t, which organization has been designated by the Secretary of State as a foreign terrorist organization since 2004, and is currently designated as such.

With respect to this conspiracy, the information says that a part and object of the conspiracy was that the defendant would and did knowingly and intentionally provide, and attempt to provide, ISIL with material support or resources, knowing that ISIL was a designated foreign terrorist organization and that ISIL engages and has engaged in terrorist activity and

also that ISIL engages and has engaged in terrorism. And the offense occurred, in whole or in part, in the United States and second the offense occurred in and affecting interstate and foreign commerce.

Before we get to Count Seven, which is the last count in the information, if counsel wish to add anything to Count Six, they may.

MR. TURNER: No, your Honor.

MS. SHROFF: No, thank you.

THE COURT: No? Okay.

Finally, we come to the last count, Count Seven. This is not a conspiracy either. This is, again, a substantive charge, a substantive count, and the offense is providing material support and resources to a designated foreign terrorist organization. As contrasted, again, with the conspiracy to do that, this is the substantive count actually of doing that.

It says that from at least in or about early 2016 up to and including in or about May 21, 2016, in the Southern District of New York, Mr. El Bahnasawy did knowingly and intentionally provide and attempt to provide material support or resources to a foreign terrorist organization, namely, ISIL. And ISIL, as we said before, has been designated by the Secretary of State as a foreign terrorist organization since 2004 and is currently designated as such. And he did so --

that is to say Mr. El Bahnasawy -- knowing that ISIL was a designated foreign terrorist organization and that ISIL engages, and has engaged, in terrorist activities and knowing also that ISIL engages, and has engaged, in terrorism, and also that the offense occurred, in whole or in part, within the United States, and the offense occurred in and affected interstate and foreign commerce.

And then the count gives this example: In the to wit portion of the count, it says, "The defendant participated in the planning and preparation for terrorist attacks against New York City for which he caused materials to be shipped in interstate commerce and for which he traveled from Canada to the State of New Jersey."

So that's Count Seven. If the government wishes to supplement that summary, they may well do so.

MR. TURNER: No, your Honor.

THE COURT: How about defense?

MS. SHROFF: No, thank you.

THE COURT: Okay.

So, now, Mr. El Bahnasawy, in order to have a valid plea, you need to understand what are the potential maximum sentences that could be imposed against you for these various seven crimes or counts. Some can be put together because the maximum is the same for Counts One, Two and Three. Each of those counts carries a maximum term of imprisonment of life

imprisonment. Do you realize that?

THE DEFENDANT: Yes.

THE COURT: Each of those three counts carries a maximum term of supervised release and the maximum term for each of those counts is lifetime supervised release. Do you realize that?

THE DEFENDANT: Yes.

THE COURT: And each of those three counts carries a maximum fine, which is the greatest of $250,000 or twice the gross pecuniary gain derived from the crime or twice the gross pecuniary loss to persons other than yourself resulting from the offense. Do you realize that that maximum fine applies to Counts One, Two and Three?

THE DEFENDANT: Yes.

THE COURT: Do you realize also that each of those counts -- one, two and three -- carries along with it a $100 special assessment?

THE DEFENDANT: Yes.

THE COURT: Then let's turn to Counts Four and Five. They have the same maximum penalties, as follows: Count Four and Five have a maximum term of imprisonment each of 15 years of imprisonment. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And they each have a maximum term of supervised release, which is lifetime supervision. Do you

realize that?

THE DEFENDANT: Yes.

THE COURT: And they also have the maximum fine which is the greatest of $250,000 or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than yourself as a result of the offense. Do you realize that?

THE DEFENDANT: Yes.

THE COURT: And then each of those two counts, Counts Four and Five, has a $100 special assessment attached to it. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Then, turning to the last two counts, Counts Six and Seven, they each have a maximum term of imprisonment of 20 years. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: They each have a maximum term of supervised release which is lifetime. Do you realize that?

THE DEFENDANT: Yes.

THE COURT: And they each have a maximum fine, again, which is the greatest of $250,000 or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than yourself. Do you realize that?

THE DEFENDANT: Yes.

THE COURT: Do you also realize that Counts Six and

Seven also carry with them each a $100 special assessment?

THE DEFENDANT: Yes.

THE COURT: So you realize then, do you, that you could be facing, you are facing, as maximums lifetime imprisonment?

THE DEFENDANT: Yes.

THE COURT: And lifetime supervision?

THE DEFENDANT: Yes.

THE COURT: And total special assessments of $700, do you realize that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that a felony adjudication -- which, each one of these seven counts is a separate felony -- could result in your being deprived of certain rights? These are actually rights of citizenship -- so I'm not sure they apply to you anyway because you're a citizen of Canada -- that is, the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

I don't think those rights adhere to non-U.S. citizens. Does anybody know the answer to that? I think they apply to American citizens, right, and not Canadians?

MR. TURNER: That would also be our understanding, your Honor, and in an abundance of caution, we do think it probably makes sense to go through those anyway.

THE COURT: Okay.

Then I'm asking that question, Mr. El Bahnasawy: You realize that, to the extent you have these rights, they would be lost as a result of your being convicted by pleading guilty to any of these and certainly to all of these felony counts that I have summarized? Do you realize that?

THE DEFENDANT: Yes.

THE COURT: Is this a case that involves restitution in any way?

THE COURT: Then I'm going to ask you, Mr. El Bahnasawy: Do you understand that I may order you to pay restitution to any victims at the time of sentencing? You realize that?

THE DEFENDANT: Yes.

THE COURT: Do you understand, further, that there is no parole in the federal system, which is where we are? Unlike the state system, which has in some instances a parole feature, there is no parole from the federal system, which is where we are. Do you realize that?

MS. SHROFF: Your Honor, may I just have a second?

THE COURT: Yes.

(Pause)

THE DEFENDANT: Yes, I understand.

THE COURT: You understand that? Okay.

I mentioned this a few minutes ago very briefly but the concept here is that in addition to incarceration, you could be subject to some period of supervised release following incarceration. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you realize that with respect to supervised release, there are undoubtedly, if there were such a regime of supervision put in place, there would be terms and conditions attached and that if you failed to comply with those terms and conditions, you could, following a subsequent hearing, be returned to prison? Do you realize that?

THE DEFENDANT: Yes.

THE COURT: Do you realize that such a hearing would be without a jury, just before me as the sentencing judge? Do you realize that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that, being a non-U.S. citizen, you may be subject to deportation following your conviction here?

THE DEFENDANT: Yeah, I realize.

THE COURT: Are you currently serving any other sentences, either in state courts, from state courts, or from

federal courts?

THE DEFENDANT: No.

THE COURT: Being prosecuted in any other courts for any crime?

THE DEFENDANT: No.

THE COURT: Let me go over the factors that I will consider at sentencing under a statute that's referred to as 18, United States Code, Section 3553(a). That is to say that in my endeavor to come up with a fair and reasonable sentence, I look at that and evaluate the factors and objectives of that statute, and they include the following: The nature and the circumstances of the offense or crimes; and your history and characteristics; and also the need for such a sentence imposed to reflect the seriousness of the crimes; to promote respect for the law; to provide a just punishment for these crimes; to afford adequate deterrence to criminal conduct; to protect the public from further crimes; to provide you with needed educational or vocational training or medical care or other correctional treatment in the most effective manner.

In doing all that, I will look at the kinds of sentences available, the kinds of sentence and the sentencing range established in the United States Sentencing Guidelines; I'll look at any policy statements issued by the United States Sentencing Commission; I'll seek to avoid unwarranted sentence disparities among similarly situated defendants; and, lastly, I

will provide, as appropriate, for restitution.

Ms. Shroff, have you had discussions, preliminary as they may have been, with Mr. El Bahnasawy about sentencing and about how one goes about sentencing in federal court?

MS. SHROFF: I have, your Honor.

THE COURT: So do you understand, Mr. El Bahnasawy, that these factors and objectives are what I will be involved in considering in determining what is a fair and reasonable sentence in your case?

THE DEFENDANT: Yes.

THE COURT: So, do you realize also, Mr. El Bahnasawy, that even if you don't like the sentence that I impose, you would not be able for that reason alone to withdraw today's guilty plea? Do you realize that?

THE DEFENDANT: Yes.

THE COURT: In the plea agreement, there is a sentence, if not exactly this but to the effect that the sentence to be imposed upon the defendant, Mr. El Bahnasawy, is within the sole discretion of the Court.

Counsel first, do you agree with that statement?

MR. TURNER: Yes, we do, your Honor.

THE COURT: And defense counsel?

MS. SHROFF: Yes, your Honor.

THE COURT: And, Mr. El Bahnasawy, do you agree with that as well?

THE DEFENDANT: Yes.

THE COURT: Okay.

Then the bottom line, so to speak, Mr. El Bahnasawy, do you think you fully understand the consequences of pleading guilty here today?

THE DEFENDANT: Yes, I do.

THE COURT: Has anybody threatened you or forced you in any way to plead guilty?

THE DEFENDANT: No.

THE COURT: Including your attorneys?

THE DEFENDANT: Yes, no one.

THE COURT: Including them?

THE DEFENDANT: Yes.

THE COURT: So they did not threaten you or force you to plead guilty; is that what you're saying?

THE DEFENDANT: Yes.

THE COURT: I referred before to the plea agreement. I want to just make sure that you read it thoroughly and carefully or at least considered it thoroughly and carefully with your attorneys before you signed it. The plea agreement is dated October 11th, 2016, on the front page, even though I think it was signed yesterday, October 12th. You went over that carefully with your counsel before you signed it?

THE DEFENDANT: Pardon?

THE COURT: I said, did you go over that plea

33

XGADKELBP SEALED -- DO NOT DOCKET

agreement carefully with your counsel before you signed it?

THE DEFENDANT: Yes, I did.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

THE COURT:

I want to make sure you understand that your guilty plea and conviction make it very likely that you will be deported from the United States and that that deportation is likely and presumed to be mandatory, and that, at a minimum, you are at the risk of being deported or suffering other adverse immigration consequences as a result of your plea and your conviction. Do you realize that?

THE DEFENDANT: Yes.

THE COURT: Has anybody made any promise or inducement that is causing you to plead guilty here today?

THE DEFENDANT: No.

THE COURT: Has anyone made a promise to you as to what your sentence in this matter will be?

THE DEFENDANT: No.

THE COURT: Including any attorneys?

THE DEFENDANT: No.

THE COURT: Now we'll turn to the government and ask what, in summary, the government would be able to prove, what evidence, et cetera, if the case were to have gone to trial instead of being resolved in this plea. This is where you may wish to discuss the elements of the various counts that I described.

MR. TURNER: Yes, your Honor.

In light of the fact that all of the counts in the information pertain to a continuing course of conduct, if it's okay with the Court, I'll set forth the elements of all of the counts first and then state what the government's proof would show if the matter went to trial.

THE COURT: That would be fine.

MR. TURNER: Your Honor, Count One of the information charges a conspiracy to use a weapon of mass destruction in violation of 18, U.S.C., Section 2332a. The elements of that offense are first that the defendant knowingly conspired to use a weapon of mass destruction without lawful authority; second, that the intended use of the weapon of mass destruction was against persons or property within the United States; and; third, that at least one of the jurisdictional requirements set forth in subsection (a)(2) of Section 2332a is met, which

include any of the following: The mail or any facility of interstate or foreign commerce was used in furtherance of the offense; the targeted property within the United States is used in interstate or foreign commerce or in an activity that affects interstate or foreign commerce; any perpetrator traveled in, or caused another to travel in, interstate or foreign commerce in furtherance of the offense; or that the offense affected or the results of the offense would have affected interstate or foreign commerce.

The government notes that the term "weapon of mass destruction" is defined, in subsection (c) of Section 2332a, to include any destructive device as that term is defined in 18, U.S.C., Section 921(a)(4), which defines destructive device to include any explosive or incendiary bomb or device similar.

Your Honor, with respect to Count One and each of the conspiracy counts Charged in the information, the elements of a conspiracy are: First, the existence of an agreement between two or more persons to commit the charged offense as alleged in the information; and, second, that the defendant knowingly and willfully became a member of the charged conspiracy.

Count Two charges a conspiracy to commit acts of terrorism transcending national boundaries in violation of 18, U.S.C., Section 2332b. The elements of that offense are: First, that the defendant knowingly conspired to kill, maim, commit an assault resulting in serious bodily injury or assault

with a dangerous weapon persons within the United States or to create a substantial risk of serious bodily injury to another person by destroying or damaging a structure, conveyance or other real or personal property in the United States; second, that the conduct involved in the offense transcended national boundaries; third, that the act in question, that is, the object of the conspiracy, violated the laws of any state or of the United States; and, fourth, that at least one of the jurisdictional requirements set forth in subsection (b) of Section 2332b is met, which include any of the following: The mail or any facility of interstate or foreign commerce was used in furtherance of the offense or that the offense would have obstructed, delayed or affected interstate or foreign commerce if the offense had been consummated.

Count Three charges a conspiracy to bomb a place of public use and public transportation system in violation of 18, U.S.C., Section 2332f. The elements of that offense are: First, that the defendant knowingly conspired to deliver, place, discharge or detonate an explosive or other lethal device in, into or against a place of public use or a public transportation system; second, that the defendant did so with the intent to cause death or serious bodily injury or to cause extensive destruction of the place or system where such destruction was likely to result in major economic loss; and, third, that at least one of the jurisdictional requirements set

forth in subsection (b) of Section 2332f is met, which include either of the following: That the offense took place in the United States and a perpetrator is a national of another state or that the offense took place outside the United States and a perpetrator is a national of the United States or a perpetrator is found in the United States.

Count Four of the information charges the defendant with conspiring to provide material support and resources to terrorists in violation of 18, U.S.C., Section 2339A.

Count Five, your Honor, charges a substantive violation of that statute, that is, providing and attempting to provide material support and resources to terrorists in violation of that statute, Section 2339A.

The elements of the charged violations of Section 2339A are: First, that the defendant provided or attempted to provide material support or resources and, in the case of Count Four, that he conspired to do so; and the second element is that the defendant knew or intended that the support or resources were to be used in preparation for, or in carrying out, a violation of any of the statutes that are listed in subsection (a) of Section 2339A, which include each of the statutes that is charged in Counts One through Three of the information, namely, 18, U.S.C., Sections 2332a and 2332b and 2332.

Also, your Honor, the term "material support or

resources" is defined in subsection (b) of Section 2339A to include property, services and personnel, which may include the defendant himself.

Count Six of the information charges the defendant with conspiring to provide material support and resources to a foreign terrorist organization, namely, ISIL, the Islamic State of Iraq and the Levant, in violation of 18, U.S.C., Section 2339B. And Count Seven charges a substantive violation of that statute, that is, providing, and attempting to provide, material support and resources to ISIL.

The elements of the charged violations of Section 2339B are: First, that the defendant provided, or attempted to provide, material support or resources, as that term is defined in Section 2339A, to a designated foreign terrorist organization, and, in the case of Count Six, that he conspired to do so; the second element is that the defendant knew that the organization had been designated as a foreign terrorist organization or that the organization had engaged or was engaging in terrorist activity or terrorism; and, third, that at least one of the jurisdictional requirements set forth in subsection (d) of Section 2339B is met, which include either of the following: That the offense occurred, in whole or in part, in the United States or that the offense occurred in and affected interstate and foreign commerce.

Finally, your Honor, with respect to venue for each of

the counts charged in the information, the government would need to establish by a preponderance of the evidence that venue in the Southern District of New York is appropriate.

THE COURT: And the time frame, I think, that you're referring to is the one that I did also, that is to say, early 2016 to on or about May 21, 2016?

MR. TURNER: That's correct, your Honor, in or about early 2016 to the date of the defendant's arrest, which was May 21st of 2016.

THE COURT: Thank you.

MR. TURNER: Your Honor, I can proceed to the proof if --

THE COURT: Sure.

MR. TURNER: Your Honor, the government's proof in this case includes, among other evidence, electronic communications, including communications between the defendant and an undercover law enforcement officer, or UC; documentary and physical evidence, including records and materials evidencing the defendant's purchase and shipment of bomb-making materials; and law enforcement and other witness testimony.

At trial, the government's evidence would prove beyond a reasonable doubt, among other things, that between in or about early 2016 and the defendant's arrest, on May 21st of 2016, the defendant conspired to, and did, provide material support to ISIL, which has been a designated foreign terrorist

organization since 2004.

In particular, the evidence would show that the defendant, a Canadian citizen, participated in a conspiracy to carry out terrorist attacks in New York City in support of ISIL. The objectives of the plot included detonating explosive devices in the New York City Subway system and Times Square. The evidence would show that the defendant purchased materials on the Internet for the purpose of constructing such explosive devices and caused such materials to be shipped interstate. The evidence would also show that the defendant, while residing in Canada, engaged in electronic communications using a cellular telephone and the Internet with multiple coconspirators and with the UC in furtherance of the plot. One of those coconspirators with whom the defendant communicated was a U.S. citizen residing in Pakistan.

In the course of the conspiracy, the defendant communicated with the UC in furtherance of the plot, knowing that the UC was located in Manhattan, New York.

On May 21, 2016, the defendant traveled from Canada into the United States for the purpose of carrying out the planned attacks in New York City.

Finally, your Honor, the evidence would show that the defendant acted knowingly and intentionally and that he knew what he was doing was unlawful.

THE COURT: Thank you.

MS. SHROFF: Your Honor, may I just have a second with the government?

THE COURT: Yes, sure.

(Pause)

MS. SHROFF: Thank you, your Honor. I appreciate it.

THE COURT: Now I'm going to turn back to Mr. El Bahnasawy and ask him, having listened to what the government had to say about what it thinks it would be able to prove if the case were to go to trial, and in light of the series of questions that I have asked him and the answers that he's given: Do you, Mr. El Bahnasawy, at this time wish to plead guilty or not guilty to these seven crimes set forth in the superseding information?

THE DEFENDANT: I wish to plead guilty.

THE COURT: So, then would you tell me in your own words -- and if you could speak up so the court reporter can surely hear you -- what it is that makes you believe that you are guilty of the seven offenses set forth in the superseding information.

THE DEFENDANT: In the spring of 2016, I agreed with others to carry out an attack in Times Square, to support ISIL; specifically, we agreed to try to set off a bomb in Times Square. I used the Internet and sent materials through the mail in furtherance of the conspiracy, and I also traveled from Canada to the United States.

THE COURT: Okay, so you said the conspiracy, and there are seven crimes set forth in the information. I'm not sure that all of those are covered by that statement.

What do you think, counsel for the government?

MR. TURNER: Your Honor, one question we would respectfully ask the Court to pose is whether an additional target of the attacks was the New York City Subway system.

THE COURT: Okay. Let me come to that in a minute. Do you think, though, that that statement covers all seven offenses set forth in the superseding information, with the addition of the New York City Subway system?

MR. TURNER: We do, your Honor. And we're also not suggesting that the subway system is necessarily necessary to be sufficient. I will note that in setting forth the jurisdictional requirements, obviously, only one of those is necessary for each of the seven counts but, otherwise, we do believe that it's sufficient, your Honor.

THE COURT: So you believe it covers all of the conspiracies alleged as well as the substantive crimes?

MR. TURNER: We do, your Honor.

THE COURT: So, then let me pose that question to you, Mr. El Bahnasawy: Was one of the targets of your activity, intended targets, the New York City Subway system?

THE DEFENDANT: Yes.

THE COURT: Ms. Shroff and Mr. El Bahnasawy, could I

hear that statement of yours once again, just to make sure I understand it all?

THE DEFENDANT: All right. In the spring of 2016, I agreed with others to carry out an attack in Times Square, to support ISIL; specifically, we agreed to try and set off a bomb in Times Square. I used the Internet and sent materials through the mail in furtherance of the conspiracy, and I also traveled from Canada to the United States.

THE COURT: Okay.

Did you know that ISIL, the United States, was a foreign terrorist organization?

THE DEFENDANT: Yes, I knew that.

THE COURT: That satisfies me, if it does the government, for a plea covering the seven counts in the offense.

MR. TURNER: Your Honor, we would ask the Court to inquire as to whether the defendant understood that what he was doing was wrong and unlawful at the time that he was doing it.

THE COURT: Okay, that's a fair question.

Mr. El Bahnasawy, did you understand that what you were doing and attempting to do was wrong and unlawful, at the time you were attempting to commit these seven crimes?

THE DEFENDANT: Yes, I did.

THE COURT: Anything else?

MR. TURNER: Nothing from the government, your Honor.

THE COURT: Okay.

Mr. El Bahnasawy, are you pleading guilty to these seven crimes charged because you are in fact guilty of each of them?

THE DEFENDANT: Yes.

THE COURT: And does the government counsel agree that there is a sufficient factual predicate for this guilty plea?

MR. TURNER: Yes, your Honor.

THE COURT: And how about defense counsel?

MS. SHROFF: No, your Honor. We have discussed the matter and the answer would be no. *

THE COURT: You believe that there is a sufficient factual predicate for these guilty pleas?

MS. SHROFF: There's a sufficient factual basis, your Honor, and we have discussed the defenses that would possibly play in, and to that the answer is no.

THE COURT: I agree also. It is the finding of this Court, in U.S. v. Abdulrahman El Bahnasawy, that Mr. El Bahnasawy is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges against him and the consequences of entering today's guilty plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact, supporting each of the essential elements of the seven offenses.

The plea is therefore accepted and, Mr. El Bahnasawy

* Public Defenders advised the Court that Ms. Shroff initially misheard the Court's question.

is now adjudged guilty of these seven offenses, or crimes, set forth in the superseding information.

Did counsel, starting with the government, wish to add anything to today's plea proceeding?

MR. TURNER: A few quick items, your Honor:

First,

the defendant has agreed to admit the forfeiture allegations that are set forth in the information and I'm not sure that we have covered that, your Honor. So we would ask that the defendant acknowledge the forfeiture and admit the forfeiture allegations.

THE COURT: Okay. So where in the plea agreement exactly?

MR. TURNER: This is the second full paragraph on page 3., and the forfeiture allegations are set forth at the last page of the superseding information.

THE COURT: If you could take a look at that, Mr. El Bahnasawy, with counsel, the government is talking about the paragraph that begins, "The defendant further admits the forfeiture allegations with respect to Counts One through Seven of the information and agrees to forfeit to the United States, pursuant to Title 18, United States Code," and other sections of the U.S. Code, "all right, title and interest in assets,

foreign and domestic," et cetera. Could you just go over that paragraph and let me know if you understand its contents and if you agree to this forfeiture provision.

THE DEFENDANT: Yes, I understand and agree.

THE COURT: Did you have any other questions?

MR. TURNER: Not with respect to the plea, your Honor.

THE COURT: Okay.

MR. TURNER: First, your Honor, in terms of sealing, the Court's sealing order does remain in effect, on consent. And in light of that order and pursuant to that order, we would ask that the transcript of today's proceeding as well as the superseding information and any associated docket entries be maintained under seal and that docketing be delayed.

THE COURT: let me ask the government if there's anything else you wish to add to today's proceeding?

MR. TURNER: No, your Honor.

THE COURT: How about the defense?

MS. SHROFF: No, your Honor.

THE COURT: Is the government satisfied with today's plea allocution to the seven crimes set forth in the superseding information?

MR. TURNER: Yes, your Honor, we are.

THE COURT: Is the defense also?

MS. SHROFF: Yes, your Honor.

THE COURT: Mr. Kaminsky, you are?

MR. KAMINSKY: Yes, your Honor.

THE COURT: Okay. Anything else?

MS. SHROFF: No, thank you, your Honor.

MR. TURNER: No, your Honor. Thank you.

THE COURT: Nice to see you all. Thanks.

MR. TURNER: Thank you, Judge.

* * *