*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 6, 2017

**BY ECF AND EMAIL**

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    <u>United States</u> v. <u>Abdulrahman El Bahnasawy</u>, S1 16 Cr. 376 (RMB)

Dear Judge Berman:

    The Government respectfully submits this letter in advance of the hearing scheduled for tomorrow, November 7, 2017, at which the Court has advised it will address matters relating to the defendant's representation. In accordance with the direction of the Court at the conference held on November 2, 2017, attached hereto as Exhibit A is the Government's proposed set of questions for the Court to pose at the November 7 hearing, to ensure that the defendant's desire to change counsel is voluntary and unequivocal, and to address the potential conflict of interest arising from the fact that prospective defense counsel's legal fees would be paid by a third party with whom they have an attorney-client relationship. By letter submitted to the Court today, prospective defense counsel, Mr. Frisch and Mr. Wright, have asserted that they do not believe it is appropriate for the Court to engage in any inquiry beyond questioning the defendant to ensure that he wishes to substitute counsel. However, as explained below, it is well established that where, as here, there appears to be a third-party payor of the defendant's legal fees, it is incumbent upon the Court to engage in a *Curcio* inquiry regarding the inherent potential conflict of interest that arises in such situations.

    Prior to the November 2 proceeding, Mr. Frisch and Mr. Wright advised the Government that their legal fees arising out of their prospective representation of the defendant in this case would be paid by the defendant's parents. At the November 2 proceeding, Mr. Frisch further informed the Court that his and Mr. Wright's firm represents the defendant's parents. Nov. 2, 2017 Tr. at 8-9. The inquiry at the November 7 hearing therefore should include questioning, in accordance with *United States* v. *Curcio*, 680 F.2d 881 (2d Cir. 1982), to investigate the nature of the *per se* potential conflict of interest that arises, under well-established Second Circuit law, when a defendant's legal fees are paid by a third party, and to determine (assuming such inquiry reveals only a potential conflict) whether the defendant knowingly and intelligently waives that potential conflict of interest.

The Second Circuit has long recognized that a potential conflict of interest arises when an attorney is paid by someone other than the attorney's client, triggering an obligation for a court to inquire as to the nature of the conflict:

> Ethical considerations warn against an attorney accepting fees from someone other than her client. As we stated in a different context, the acceptance of such "benefactor payments" "may subject an attorney to undesirable outside influence" and raises an ethical question "as to whether the attorney's loyalties are with the client or the payor."

*United States* v. *Locascio*, 6 F.3d 924, 932 (2d Cir. 1993) (quoting *In re Grand Jury Subpoena Served Upon John Doe*, 781 F.2d 238, 248 n.6 (2d Cir. 1985) (*en banc*)); *see, e.g.*, *Amiel* v. *United States*, 209 F.3d 195, 198-99 (2d Cir. 2000) (holding that if counsel advised defendant to adopt a strategy that was in the interests of the third-party payor of counsel's fees but not in the best interests of the defendant, "these facts . . . would entitle appellant to relief [on an ineffective assistance claim] on the ground that trial counsel abdicated his duty of loyalty by permitting a third party who paid his fees to influence his professional judgment in representing [the defendant]" (citations omitted)). *Cf. Triana* v. *United States*, 205 F.3d 36 (2d Cir. 2000) (no actual conflict found where attorney was paid by unknown third party with whom attorney did not discuss tactics or strategy).

Indeed, it is commonplace in this District for courts to conduct *Curcio* inquiries where, as here, there appears to be a third-party payor of the defendant's legal fees. *See, e.g.*, *United States* v. *Mehmet Hakan Atilla*, S3 15 Cr. 867 (RMB) (May 18, 2017 *Curcio* hearing); *United States* v. *Efrain Antonio Campo Flores*, 15 Cr. 765 (PAC) (May 12, 2016 *Curcio* hearing); *United States* v. *Evgeny Buryakov*, 15 Cr. 73 (RMB) (June 1, 2015 *Curcio* hearing); *United States* v. *Cheng Le*, 15 Cr. 38 (AJN) (May 13, 2015 *Curcio* hearing; as in this case, defense counsel was retained by the defendant's parents); *United States* v. *Alvaro Alfredo Eraso Mejia*, 11 Cr. 483 (JMF) (May 31, 2013 *Curcio* hearing); *United States* v. *Sulaiman Abu Ghayth*, 98 Cr. 1023 (LAK) (May 15, 2013 *Curcio* hearing).

We submit that, in light of the facts present here and under the well-established law outlined above, the Court should conduct an inquiry to determine whether Mr. Frisch and Mr. Wright have a conflict, and if so, determine the nature of that conflict. *See United States* v. *Stein*, 410 F. Supp. 2d 316, 323-24 (S.D.N.Y. 2006) ("[A]fter learning of the possibility of a conflict of interest, the district court first must determine whether the attorney has an actual conflict, a potential conflict, or no conflict at all." (internal quotation marks omitted)). As part of that inquiry, the Court "must investigate the facts and details of the attorney's interests." *United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994).

If, as a result of that inquiry,

> the court discovers no genuine conflict, it has no further obligation. At the other end of the spectrum, if the court determines that counsel has an actual conflict that is so severe as to indicate *per se* that the rendering of effective assistance will be impeded, or is analogous to

> such a conflict in breadth and depth, the court must . . . disqualify counsel. And if, between these two extremes, the court determines that the attorney suffers from a lesser [actual] or only a potential conflict, then it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice.

*Stein*, 410 F. Supp. 2d at 324 (quoting *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003)).

In the case of a lesser actual or potential conflict, before accepting a defendant's waiver, "the court must advise the defendant of the dangers arising from the conflict, encourage the defendant to seek advice from independent counsel, and then determine whether the defendant understands the dangers of proceeding with conflicted counsel and knowingly and intelligently chooses to continue with the representation in spite of the conflict." *Id.* (citing *Curcio*, 680 F.2d at 888-89).

Accordingly, as reflected in Exhibit A, we respectfully request that the Court "investigate the facts and details of the attorney's interests," *Levy*, 25 F.3d at 153, by asking Mr. Frisch and Mr. Wright about who is paying them to represent the defendant and what, if any, instructions or advice they have received from such third party (which we understand to be the defendant's parents), either directly or through others, with respect to their representation of the defendant. *See United States* v. *Kliti*, 156 F.3d 150, 153 (2d Cir. 1998) ("In fulfilling this initial obligation to inquire into the existence of a conflict of interest, the trial court may rely on counsel's representations." (citing *Levy*, 25 F.3d at 154)). As the Court noted at the November 2 proceeding, it is not apparent that the interests and wishes of the defendant and his parents relating to his representation have always been aligned in this matter. <u>See</u> Nov. 2, 2017 Tr. at 10, 16, 18; <u>see also</u> <u>id.</u> at 5 (Court advising prospective defense counsel that: "I want to understand your role, the parents' role, [whom] you represent, if you represent the parents too, whether there's any conflict of interest between if you do—which I think you do—representing the parents and representing the son, if their interests are aligned or if there's any difference").

     Assuming that such inquiry reveals only a potential conflict, Exhibit A includes proposed questions for the Court to ask the defendant to determine whether he knowingly and intelligently waives that potential conflict.

                                      Respectfully submitted,

                                      JOON H. KIM
                                    Acting United States Attorney

                            By:           /s/          
                                    Negar Tekeei / George D. Turner
                                    Assistant United States Attorneys
                                    (212) 637-2562 / 2482

Enclosure

Cc (w/encl):    Andrew Frisch, Esq. (by email)
                       Jason Wright, Esq. (by email)
                       Sabrina Shroff, Esq. (by email)
                       Clay Kaminsky, Esq. (by email)

# EXHIBIT A

*United States* v. *Abdulrahman El Bahnasawy*, S1 16 Cr. 376 (RMB)
**Government's Proposed Inquiry for November 7, 2017 Hearing**

**Proposed Inquiry of Prospective Defense Counsel, Andrew Frisch and Jason Wright**

1. Has the defendant paid you or promised to pay you to represent him in this case? *If no:* Who has paid you or promised to pay you to represent the defendant?

2. Do you have an attorney-client relationship with that third party?

3. What, if any, instructions or directions have you received from that third party, either directly or through others, with respect to your representation of the defendant?[1]

4. By letter dated August 15, 2017 (the "August 15 Letter"), you informed the Federal Defenders of New York (the "Federal Defenders") that your firm is local counsel to Canadian attorney Dennis Edney. Does that remain the relationship between your firm and Mr. Edney, with respect to this matter?

5. Is Mr. Edney also seeking to represent the defendant in connection with this case? Is Mr. Edney involved, or will he be involved, in your firm's representation of the defendant? *If the answer to either question is yes, the Court should engage in a similar inquiry regarding Mr. Edney's circumstances, along the lines of Questions 1 through 4 above.*

6. In the August 15 Letter, you informed the Federal Defenders that if the defendant requested that your firm represent him in this case, your firm would decline to represent him. What has changed between then and now?

**Proposed Inquiry of Defendant Abdulrahman El Bahnasawy**

Introductory Questions to Establish Competence

7. How old are you?

8. How far did you go in school?

9. Do you currently consult a doctor for any condition?

10. Are you currently under the influence of alcohol or drugs of any kind?

11. Is there anything interfering with your ability to understand what is happening here today?

The Defendant's Application for New Counsel

12. Are you currently represented by the Federal Defenders?

13. How long have the Federal Defenders represented you?

---

[1] To the extent this question calls for prospective new counsel to discuss communications subject to the attorney-client privilege, the Court could pose this question *ex parte* and *in camera*.

14. Have the Federal Defenders represented you in connection with any matters other than this case?  *If yes:*  What other matters?

15. Have you been satisfied with the representation by the Federal Defenders?

16. Do you wish to continue to be represented by the Federal Defenders, or do you wish to be represented by new counsel, Mr. Frisch and Mr. Wright[2]?

    *If the defendant wishes to substitute Mr. Frisch and Mr. Wright as counsel:*

17. How long have you known Mr. Frisch?  How long have you known Mr. Wright?  Has Mr. Frisch or Mr. Wright represented you in connection with any matters other than this case?  *If yes:*  What other matters?

18. Is your choice to be represented by Mr. Frisch and Mr. Wright a choice that you have made voluntarily and of your own free will?  *If no, inquire further.*

19. Has anyone told you that you are required to, or must, choose Mr. Frisch and Mr. Wright to represent you?  *If yes, inquire further.*

20. Has anyone threatened you with regard to your choice of counsel in this case?  *If yes, inquire further.*

21. Has anyone made any promises to you, or offered any inducements to you, with regard to your choice of counsel in this case?  *If yes, inquire further.*

The Defendant's Right to Conflict-Free Representation

22. Have you paid or promised to pay Mr. Frisch or Mr. Wright for their services representing you in this case?

23. Has anyone else paid or promised to pay Mr. Frisch or Mr. Wright for their services representing you in this case?  Who is that?

24. Do you understand that, in every criminal case, including this one, the defendant is entitled to be represented by an attorney or attorneys whose loyalty to him is undivided, and who is not subject to any force or consideration that might in any way intrude upon the attorney's loyalty to his client's interests?

25. Do you understand that whenever someone other than the defendant is paying the lawyer or lawyers representing that defendant, it is possible that whoever is paying may have interests different than the defendant's interests, and that the lawyer's judgments may be

---

[2] Depending on the results of the proposed inquiry outlined in Questions 4 and 5 relating to Mr. Edney's circumstances and potential involvement in this matter, the Court should reference Mr. Edney as appropriate, in addition to Mr. Frisch and Mr. Wright, throughout the remainder of the proposed colloquy.

2

    influenced by the wishes of whoever is paying his bill, or by what the lawyer thinks are the wishes of whoever is paying the bill, rather than the wishes of the defendant?

26. So it is possible, in this case, that Mr. Frisch and Mr. Wright may be influenced, in the advice they give you and in the way they defend you, by what they are told are the wishes of, or what they think are the wishes of, [your parents], and that those wishes may be different than your wishes?  Do you understand that?

27. And do you understand that this situation—having your lawyer paid by someone other than you—creates a risk to you that they may not be acting solely in your interests?

28. For example, Mr. Frisch and Mr. Wright may have a desire to advise you to follow a course of action that is desired by, or in the interests of, [your parents], but that may be contrary to your own interests.  Do you understand that?  *The Court should conduct further inquiry on this topic, as appropriate, in light of information learned in response to Question 3 above.*

29. Have you spoken with any lawyer other than Mr. Frisch, Mr. Wright, or the Federal Defenders about the risks of being represented by Mr. Frisch and Mr. Wright in this case?  *If yes:*  Without telling me what was said, please tell me the name of the lawyer or lawyers with whom you spoke.  When did you speak with him/her/them?  For how long?

30. Do you understand that you have a right to consult with a lawyer other than Mr. Frisch, Mr. Wright, or the Federal Defenders to determine whether you wish Mr. Frisch and Mr. Wright to represent you?  Do you understand that the Court will give you an opportunity to do so?  Do you understand that, if you cannot afford other counsel, the Court will appoint counsel to consult with you about this conflict-of-interest issue?  Do you understand that the Court encourages you to consult with another lawyer about this conflict-of-interest issue?

<u>General</u>

31. Do you understand that you have the right not to have Mr. Frisch and Mr. Wright represent you, based upon the existence of a potential conflict of interest?

32. It is important that you understand that no one, including the Court, can predict with any certainty the course that this case will take and that no one, including the Court, can foresee all the ways in which you may be disadvantaged by proceeding with Mr. Frisch and Mr. Wright.  Do you understand that?

33. Do you understand that it is the view of this Court, based on my experience as a judge, that it is generally ill-advised to proceed with an attorney who has a potential conflict of interest?

34. Do you agree that if I permit you to proceed with Mr. Frisch and Mr. Wright, that you will not be permitted to make any argument, on appeal or otherwise, based the potential conflict that we have discussed?  Do you agree to waive, or give up, any argument of that kind?

35. Now, to make sure you have understood what we have been discussing, please describe to me in your own words your understanding of the potential conflict or conflicts of interest that may arise in this case.

36. Is there anything that the Court has said that you wish to have explained further?

37. The Court will give you an opportunity to think about what you have been told, and to talk it over with counsel other than Mr. Frisch, Mr. Wright, or the Federal Defenders. After you have thought it over, the Court will ask whether you have considered the matters that the Court has talked to you about, either with or without an attorney. Then the Court will ask whether you wish to have Mr. Frisch and Mr. Wright as your attorneys.

38. Do you need court-appointed counsel for the purpose of consulting with you about these conflict-of-interest issues?