HB7VBAHC

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                        16 CR 376 (RMB)

5    ABDULRAHMAN EL BAHNASAWY,

6              Defendant.                CURCIO HEARING

7    ------------------------------x

8                                        New York, N.Y.
                                         November 7, 2017
9                                        1:40 p.m.

10
     Before:
11
                     HON. RICHARD M. BERMAN,
12
                                         District Judge
13

14                      APPEARANCES

15
     JOON H. KIM,
16        Acting United States Attorney for the
          Southern District of New York
17   NEGAR TEKEEI
          Assistant United States Attorney
18
     FEDERAL DEFENDERS OF NEW YORK
19        Attorneys for Defendant
     SABRINA SHROFF
20        -AND-
     ANDREW FRISCH
21
     ALSO PRESENT:  DENNIS EDNEY, ESQ.
22

23

24

25
```

HB7VBAHC

1          THE COURT:  So I think the best place to start is with

2     the two letters, one from the government.  This was in response

3     at the last hearing or the last conference in which I said that

4     I would need to ask Mr. Bahnasawy a series of questions.  And I

5     asked for proposed questions and I got dramatically different

6     responses.

7          So from the government I got a series of questions

8     which are not, in my opinion, uncommon, in a situation -- I was

9     going to say similar to this, but I don't know if that's the --

10    if any case is exactly the same.  So I definitely am inclined

11    to ask the government's questions.

12         And from the defense I got no questions because -- I

13    mean from Mr. Frisch I got no questions because he feels that

14    questions or a *Curcio* hearing or a proceeding such as this does

15    not apply.

16         So two things to say, and not to be argumentative, but

17    one is I think you are incorrect as a legal matter.  But, two,

18    and I think this will be helpful going forward, your letter is

19    devoid of any authority except your own, and that is not the

20    most persuasive way to approach something, at least with me.

21         But I do think that we do need to ask some questions.

22    And before I do do that, I want to ask Mr. Frisch a couple

23    of -- just to give us some background here.

24         I think, as I said at the last conference, there's

25    been a history in this case of -- during which Mr. Bahnasawy

1    has been represented by Federal Defenders.  There have been a

2    series -- and the record will show when these things occurred.

3    I think I indicated some of the dates at the last conference.

4              But on several occasions it came to my attention that

5    other counsel, including Mr. Frisch, I think Mr. Edney, and Mr.

6    Wright at various times were interested in coming into the case

7    and had been, I think, contacted by Mr. Bahnasawy's parents.

8    And so each time that happened, of course, we had entertained

9    and did entertain that possibility and took steps to have those

10   interested parties either read with Mr. Bahnasawy or review

11   some of the documents in the case.  But the upshot was that

12   Mr. Bahnasawy in each of those situations had determined that

13   he would prefer to go forward with the Federal Defenders and

14   not with any of the three individuals I mentioned:  Mr. Frisch,

15   Mr. Edney, or Mr. Wright.

16             During all of that period, the case was under seal, I

17   think for appropriate reasons.  And we were discussing at or

18   about the time that the most recent request came in for new

19   counsel unsealing the case in any event.  That was always the

20   ultimate goal.

21             I also got a letter from Mr. Bahnasawy, and I think it

22   was from you, Mr. Frisch, saying that Mr. Bahnasawy had

23   retained you to represent him.  So at that point in my -- just

24   so you know my thinking, I precipitated the unsealing of the

25   case so that if there were new counsel, they could have access

HB7VBAHC

1    to what had happened historically.

2             Without waiving attorney-client privilege, I would

3    like to know how, from your perspective, this came about, that

4    you are entering the case.

5             MR. FRISCH:  So, your Honor, it's actually fairly

6    simple, and I think I can address it without impairing the

7    privilege.

8             We did not enter the case previously.  And I think

9    your Honor has cited or brought to our attention a letter from

10   May --

11            THE COURT:  A letter from you?

12            MR. FRISCH:  Correct.  That's right.

13            THE COURT:  Yes.

14            MR. FRISCH:  A letter from my office or me in May, I

15   believe, of 2016.  Because at that time Mr. Bahnasawy was not

16   unequivocal about what he wanted.  And so we did not enter the

17   case; did not make an effort to do so.

18            As time has gone on, bringing us to this point in time

19   and last week, what he has said to us is unequivocal.  He has

20   said, I want you in the case.  We've met with him, we've

21   discussed it with him, and that precipitates the application

22   that we've made to the Court and my notice of appearance.

23            That's basically it.

24            THE COURT:  I think there are occasions before May,

25   actually, when your name and/or Mr. Edney's name and/or Mr.

1   Wright's name came up.  That wasn't the first occasion when it

2   came up.  And then ultimately you wrote a letter saying if you

3   were asked to be counsel, you would turn it down.  And that was

4   on behalf of, I think, everybody, Mr. Wright and Mr. Edney as

5   well.  So I know about that episode.

6          But there were times even earlier than may when the

7   idea was -- and so here's how I understood it:  I understood --

8   and the record shows this -- that at least during that period

9   in which I've been presiding, Mr. Bahnasawy was very content

10  with the advice and the representation by Federal Defenders.

11  No doubt in my mind that that's the case.  And even when other

12  names came up, I think, he was advising that his parents were

13  really the driving force behind new counsel, not him.  In

14  particular, they were the driving force behind yourself,

15  Mr. Edney, and Mr. Wright.  It wasn't his idea, I don't think,

16  at all.

17         But in recent times, as you point out, he has appeared

18  to become -- to favor the representation.  So that's where, I

19  think, you came from, so to speak, from his parents, right?  Or

20  not right?

21         MR. FRISCH:  No, I think that's right.  I think that's

22  the reason for the Court's inquiry today and the reason for the

23  Court's concern and the reason why we agree that an inquiry

24  along those lines is appropriate.

25         The fact is is that he will tell you today in response

HB7VBAHC

1    to your questions that it is his decision today.  However, we

2    entered his world, and whatever has happened in the past and

3    whatever may have been his equivocation in the past, it is

4    unequivocal today that he wants us to be his lawyers.

5            That's it.

6            THE COURT:  Mr. Frisch, you will see in this

7    proceeding and others that the world is not quite as black and

8    white as you're suggesting, especially in this instance, and

9    especially because I have such a history with Mr. Bahnasawy and

10   the case, and especially because I've spent hours on this issue

11   speaking to him directly, speaking with Federal Defenders.

12           So I think it is true that after you sent the letter

13   in May saying you would not come into the case, something

14   happened, I assume, and all of a sudden Mr. Bahnasawy also

15   changed, candidly, I think, under pressure from his parents.

16   That's the way I put it together.

17           So I have a history in family court, so I may be

18   looking at things a little different than some people.  So I

19   think that he's succumb, frankly, to the pressure of his

20   parents.  And he's a good son and didn't want to disobey them.

21   So that's really, I think, what's happened here, and that's why

22   I think we have to have an inquiry.

23           Now, in addition, though, I think, as I understand it,

24   you -- or do you, I should ask, do you also represent his

25   parents as their counsel?

HB7VBAHC

1          MR. FRISCH:  Well, let me answer that question by

2     saying this:  Our representation of the parents has always been

3     solely and exclusively in their capacity as his parents looking

4     out for him and wanting the best -- that is, there is no

5     independent representation of their interests apart from their

6     interest as parents, concern about their son.

7          THE COURT:  I don't think that's entirely accurate

8     either.  So all I'm getting at is they were your clients up

9     until the time that Mr. Bahnasawy became unequivocal about your

10     representing them.  So they, in fact, are -- I don't know if

11     they still are, if there is a separate representation of them

12     and a retainer, etc., whatever, but certainly my understanding

13     is that up until then, you did represent them in whatever

14     their --

15          MR. FRISCH:  I think in terms of duty of loyalty and

16     attorney conflicts, I don't think it's necessarily -- just on

17     that narrow a question, when, you know, the timeline of our

18     representation of them, either we have a duty of loyalty to

19     someone different that diverges --

20          THE COURT:  I'm not quarreling with that.  I'm trying

21     to have a background here.  And I think I'm correct that that

22     is the background.  I think you were -- they were your clients

23     long before Mr. Bahnasawy has said unequivocally that he would

24     like to have you as --

25          MR. FRISCH:  I don't disagree with that, Judge.

HB7VBAHC

1          THE COURT:  So to me that's germane.  Are you still?

2    Are you representing both of them?

3          MR. FRISCH:  The short answer is -- I don't know how

4    to answer that.  The short answer is we do not -- we do not

5    represent the parents other than in their role as parents of a

6    teenager.  We don't have an independent --

7          THE COURT:  Do they pay you?

8          MR. FRISCH:  No.

9          THE COURT:  That's the quickest way --

10         MR. FRISCH:  Other than retainer for the purpose of

11   representing their son, do they pay us independently to

12   represent them, the answer is no.

13         THE COURT:  Okay.  So they are not your client

14   anymore.

15         MR. FRISCH:  I think that's fair to say, yes.  I agree

16   with that.

17         THE COURT:  I don't know.

18         MR. FRISCH:  The answer is they are not our clients

19   anymore.

20         THE COURT:  So they were your clients up until some

21   point, and now they are not?

22         MR. FRISCH:  Yes, I agree with that.

23         THE COURT:  When was that point?

24         MR. FRISCH:  Whether Mr. Bahnasawy became unequivocal

25   that he wanted us to represent him.

HB7VBAHC

1      THE COURT:  And how long would you say they were your

2  clients up until that time?  Year?  Two years?  Three years?

3      MR. FRISCH:  Certainly less than -- as best as I can

4  remember, certainly less than a year.  Certainly at the time

5  that we wrote the Court the letter, which I believe was May, if

6  I'm not mistaken, that's one of the letters, certainly we

7  represented them at that point.  How much before then did we

8  represent them, not a significant period of time.  I don't

9  remember exactly, but not a significant period of time, Judge.

10      THE COURT:  And, if you know, what about Mr.  --

11      MR. FRISCH:  Same answer.

12      THE COURT:  Same for you.

13      MR. FRISCH:  Same answer.

14      THE COURT:  What about Mr. Edney?

15      MR. FRISCH:  I believe that Mr. Edney may have had

16  a -- I guess the answer to that question is I don't know for

17  sure.  I don't believe that his association with the parents

18  predates my involvement in the case in any significant way, but

19  I just can't say for 100 percent certain.  I believe that's

20  right, however.

21      THE COURT:  I think his name came up early on.  And I

22  sort of had the impression that he might have been counsel to

23  the parents.  He wasn't counsel to Mr. Bahnasawy, but I --

24      MR. FRISCH:  I believe that's -- he has -- let me

25  answer the question this way, and hopefully that will answer

HB7VBAHC

```
 1    your Honor's question:  We have consulted him on issues of
 2    foreign law with regard to international transfer treaties and
 3    that sort of thing.  The parents have consulted him in that
 4    capacity as well.  Mr. Bahnasawy has consulted him in that
 5    capacity as well.  So I think from that it may be fair to say
 6    that he has assisted and counseled the parents and he has
 7    assisted and counseled Mr. Bahnasawy.
 8              THE COURT:  But paid by the parents?
 9              MR. FRISCH:  I don't know the answer to that question.
10    I don't know.
11              THE COURT:  All right.  I'll just take a moment to
12    review some of the questions that the government has submitted.
13              (Pause)
14              THE COURT:  All right.  Well, since everybody has --
15    Mr. Frisch, in any event -- neither Mr. Wright or Mr. Edney is
16    here today, or are they?
17              MR. FRISCH:  Mr. Wright is not here.  Mr. Edney,
18    however, is in the courtroom.
19              THE COURT:  Oh, great.  Nice to see you.
20              Are you counsel to Mr. Bahnasawy's parents?
21              MR. EDNEY:  Yes.
22              THE COURT:  For how long have you been?
23              MR. EDNEY:  Approximately about a year.
24              THE COURT:  A year?
25              MR. EDNEY:  Approximately.
```

HB7VBAHC

1          THE COURT:  And are you proposing or are you seeking

2     to represent Mr. Bahnasawy now or are you just representing his

3     parents?  What is your role vis-a-vis Mr. Bahnasawy?

4          MR. EDNEY:  Quite briefly, I've been approached by the

5     parents some time ago, about a year or so, and looking for

6     advice about their son.  And so what I did was I inquired

7     properly and contacted -- I think it's Sabrina.

8          THE COURT:  Federal Defenders?

9          MR. EDNEY:  Federal defender representing.

10          And if I offer to provide some assistance in terms of

11     international law, in terms of Transfer of Offenders Act, how

12     to use it --

13          THE COURT:  Do you know what?  If you could come up

14     and use the microphone, I think we'll be able to hear you

15     better.

16          MR. EDNEY:  How is that?

17          THE COURT:  If you speak into this microphone, that

18     would be better.

19          MR. EDNEY:  And my accent doesn't make it easier.

20          THE COURT:  No, it's not the accent; I just couldn't

21     hear.

22          MR. EDNEY:  So what I was saying was that we

23     represented, giving advice to the clients for over a year.

24          THE COURT:  And the clients being Mr. Bahnasawy's

25     parents?

 1          MR. EDNEY:  Yes, sir.

 2          And then I contacted -- I don't know the public

 3     defenders by the same, is it Sabrina?  I don't mean to be rude,

 4     I wish I had the full name, but I don't.

 5          THE COURT:  Ms. Shroff.

 6          MR. EDNEY:  And offered to provide assistance in terms

 7     of being a search warrant taken out against -- at the residence

 8     of the accused.

 9          THE COURT:  Mr. Bahnasawy?

10          MR. EDNEY:  Yes.  And so I offered to assist in that,

11     seeking information to get a full understanding of the case.

12     Our conversation wasn't friendly, and that --

13          THE COURT:  It was what?

14          MR. EDNEY:  Our conversation didn't go well.

15          THE COURT:  Did not go well.

16          MR. EDNEY:  No.

17          So that's essentially -- so my job has been to try and

18     allow the parents to have some kind of sense of what's

19     happening with their son.  As I said it's been my role.  And

20     then at some point in time I thought of looking for, should it

21     be wished --

22          THE COURT:  What?

23          MR. EDNEY:  Should the accused be agreeable, I would

24     put together a legal team that would assist him.

25          THE COURT:  I see.

1          MR. EDNEY:  In fact, I have attempted to, but -- to

2    cooperate with -- with Mr. Frisch.  That never worked out at

3    all.  And so here I am today.

4          THE COURT:  Did you ever speak to Mr. Bahnasawy?  Did

5    you meet with him?

6          MR. EDNEY:  Yes, I've met with him three times,

7    including yesterday, sir.

8          THE COURT:  And apart from yesterday, when were the

9    other times, do you remember?  Very recent or last year?

10         MR. EDNEY:  No, very recently, say in the last four,

11   five months.

12         THE COURT:  You met with him twice?

13         MR. EDNEY:  Yes.

14         THE COURT:  And then once yesterday.

15         MR. EDNEY:  Yes.

16         THE COURT:  Okay.  And so what is your role now?  Has

17   it changed?

18         MR. EDNEY:  So my role is simply to -- should Mr.  --

19   should the accused be interested in new counsel, there's new

20   counsel available for him.  My role will be standing out of it,

21   I will be giving any advice about what steps I can take in

22   Canada under the International Transfer Offenders Act.

23         THE COURT:  Transfer Offenders Act is it called?

24         MR. EDNEY:  Yes.  Or any other advice that they may

25   need that would assist them in getting some assistance from the

HB7VBAHC

1   Canadian government.  That's my role.

2              THE COURT:  So have you ever been retained by

3   Mr. Bahnasawy, the defendant in this case?

4              MR. EDNEY:  No.

5              THE COURT:  Okay.  I get that.

6              So you are the parents' counsel, so to speak.

7              MR. EDNEY:  Yes.

8              THE COURT:  Not "so to speak," in fact.

9              And they pay you for your services.

10             MR. EDNEY:  That's correct.

11             THE COURT:  And has Mr. Bahnasawy, when you approached

12  him, do you know if he wanted to have you as counsel or did not

13  want to have you as counsel?  You spoke to him three times.

14             MR. EDNEY:  He has never said he didn't wish me to be

15  his counsel.  The first time we met I was trying to understand

16  through his explanation of how things were going for him.

17             My second visit with him was essentially a very social

18  matter, and I recall encouraging him to cooperate both with his

19  lawyer and with the FBI.  I encouraged him quite strongly.

20             MS. SHROFF:  Your Honor, it's a complete waiver --

21             THE COURT:  Excuse me.

22             MR. EDNEY:  And I was very strong in my comments about

23  that too.

24             And then my third time was yesterday, and essentially

25  it was -- once again, my part is social discussion.  I can tell

HB7VBAHC

1   you that I had encouraged, once again, the accused to

2   demonstrate to the authorities that he understood the trouble

3   he was in and to work hard to have a different understanding of

4   his behaviors.  And it is important on many levels, both in

5   terms of his own sense of who he is, and also on a level that

6   would persuade the Court or a parole officer to feel that he at

7   some point will be rehabilitated, and that is going to take

8   some time.

9           THE COURT:  And you are an attorney in Canada?

10          MR. EDNEY:  Yes.

11          THE COURT:  Are you admitted to practice in New York?

12          MR. EDNEY:  No.  I was appointed as foreign attorney

13  consultant.

14          THE COURT:  You were?

15          MR. EDNEY:  Sorry.  I should talk slower.

16          I was appointed by the Pentagon as a foreign attorney

17  consultant to assist a detainee in Guantanamo Bay over many

18  years.

19          THE COURT:  But not having anything to do with this

20  case?

21          MR. EDNEY:  That's correct.

22          THE COURT:  What is your, if any, relationship to

23  Mr. Frisch and Mr. Wright?  Do you have a legal relationship to

24  them?

25          MR. EDNEY:  Only to the extent that I have been

HB7VBAHC

1   assisting them in understanding how perhaps Canadian law may

2   have some assistance at some point down the road to assist

3   their client.

4            THE COURT:  I see.

5            And in that work, you were doing that as the counsel

6   for his parents, is that fair?

7            MR. EDNEY:  Yes, that is fair.

8            THE COURT:  I'm just looking over some questions.  I

9   want to see if they are applicable to you as well.

10           My recollection is it's not entirely precise or at

11   least I thought it was described at one point that Mr. Frisch

12   and Mr. Wright were local, namely New York counsel, to you, to

13   your firm or to you.  That's not accurate?

14           MR. EDNEY:  No.

15           THE COURT:  No.  So are you an independent --

16           MR. EDNEY:  Yes.

17           THE COURT:  -- attorney?  With your own practice?

18   Okay.

19           So going forward, just so I recap, your role would be

20   as counsel to Mr. Bahnasawy's parents.

21           MR. EDNEY:  Yes.

22           THE COURT:  And in that role, you would be advising

23   Mr. Frisch and Mr. Wright as needed?

24           MR. EDNEY:  As needed, sir.

25           THE COURT:  Okay.  I may have some other questions.

HB7VBAHC

1    I'm delighted that you're here.  I hope you understand, I'm not

2    trying to be intrusive, but I'm trying to do my job, so to

3    speak.  Well, not "so to speak."  That's what I'm trying to do.

4              Okay.  So then, yes, please.

5              MR. EDNEY:  Thank you, sir.

6              THE COURT:  So Mr. Frisch, you also, before today, had

7    met with Mr. Bahnasawy; is that correct?

8              MR. FRISCH:  Yes, your Honor.

9              THE COURT:  Do you remember how many times and when --

10   did you go when Mr. Edney went?

11             MR. FRISCH:  I have met with Mr. Bahnasawy in

12   Mr. Edney's presence once.

13             THE COURT:  When would that have been?

14             MR. FRISCH:  I believe it was within the last few

15   days.

16             THE COURT:  Okay.

17             MR. FRISCH:  It may have been yesterday.  It's been a

18   busy week, but it's been in the last few days.

19             THE COURT:  What about before then?

20             MR. FRISCH:  I met with Mr. Bahnasawy, I believe, a

21   total of three times, all of which has been -- all of which has

22   been recent.  My colleague Mr. Wright has met with

23   Mr. Bahnasawy more than I have, going back a longer period of

24   time.  I can't tell you precisely when the first time was.

25             THE COURT:  Mr. Wright you mean?

HB7VBAHC

1          MR. FRISCH:  Mr. Wright I mean.  But far more going

2     back in time than myself.

3          THE COURT:  Would it be a year, two years?

4          MR. FRISCH:  Oh, I wouldn't say a year or two years.

5     I think the case began somewhat a little over a year ago.  I

6     would say many, many months ago.

7          THE COURT:  Mr. Wright did.

8          MR. FRISCH:  Mr. Wright.

9          I just can't tell your Honor specifically.  I just

10    don't remember.  And I wasn't there, but I believe it goes back

11    to the -- the visits go back to some time late 2016/early 2017.

12    I just can't be sure.

13         THE COURT:  I get it.

14         And so he's in your firm?

15         MR. FRISCH:  Yes, he's of counsel to my practice.

16         THE COURT:  I see.  Okay.

17         So when he met on those occasions, he was counsel to

18    Mr. and Mrs. Bahnasawy, the parents?

19         MR. FRISCH:  Yes.

20         THE COURT:  Not to Mr. Bahnasawy, the defendant?

21         MR. FRISCH:  Yes.

22         THE COURT:  And they paid whatever the appropriate --

23         MR. FRISCH:  I don't believe they paid Mr. Wright.

24         THE COURT:  Oh, okay.

25         Did they pay you?

HB7VBAHC

1          MR. FRISCH:  No.

2          THE COURT:  No.

3          MR. FRISCH:  No.

4          THE COURT:  Oh.  Is it *pro bono*?

5          MR. FRISCH:  It's not *pro bono*.  Any funding by the

6    parents will be for the representation of Mr. Bahnasawy, if

7    your Honor approves the substitution.

8          THE COURT:  Okay.  I get it.

9          Mr. Bahnasawy, is it fair to say, has never paid you

10   any --

11         MR. FRISCH:  That's true.

12         THE COURT:  Or suggested that he would?

13         MR. FRISCH:  That's true.

14         THE COURT:  And that probably is true of Mr. Wright

15   and Mr. --

16         MR. FRISCH:  I believe --

17         THE COURT:  And Mr. Edney as well, I would imagine.

18         Okay.  And if you want to go along the questions that

19   the government submitted, you could feel free.  But they have

20   suggested -- and I think it's a good question to ask.  I think

21   we've answered it already.  You have an attorney-client

22   relationship with Mr. and Mrs. Bahnasawy, the parents at the

23   moment, or have had?

24         MR. FRISCH:  Have had.

25         THE COURT:  Okay.  And do you still?

HB7VBAHC

1          MR. FRISCH:  I'm having difficulty answering the

2    question not because of any -- not because of any inappropriate

3    thinking.  And I can only repeat this and your Honor can draw

4    whatever inference your Honor wishes to draw.  We only

5    represent them as it relates to their interest in their son.

6    There's no independent representation of them as individuals or

7    people; it's only in their concern for him.  And that's another

8    way of saying it, in my view.  And I respect that your Honor

9    may disagree.  There's no divergence of interest here; these

10   are parents concerned about their teenager.

11          THE COURT:  Sure.  I get it.

12          MR. FRISCH:  I'm not trying to dodge your question,

13   I'm just not sure how to answer it.

14          THE COURT:  No, no, no, I don't feel as if you are.

15          Just to clarify on that point, and I don't say this in

16   disrespect, but in my opinion, there has been quite a dramatic

17   divergence of opinion historically, right?

18          MS. SHROFF:  Are you asking me?

19          THE COURT:  No.  Ms. Bahnasawy is indicating she wants

20   to speak, and that's not appropriate right now.  It may become

21   appropriate, but it's not right now.

22          The divergence that I am -- and this is not an

23   impression, this has been clear to me, is that historically and

24   currently, Mr. and Mrs. Bahnasawy, the parents, have had one

25   view, which is that you, Mr. Edney, Mr. Frisch, yourself, and

1    Mr. Wright should represent their son.  And there was an

2    opposite -- a diametrically opposed opposite view by

3    Mr. Bahnasawy, which was that he did not want the three of you,

4    either alone or in combination, to represent him at that time.

5    I'm not suggesting that that may not have changed.  So that is

6    what I'm faced with.  And that is, to be sure, in my opinion,

7    quite a divergence of viewpoint.

8         And the record will bear me out, because it's all in

9    there about what Mr. Bahnasawy wanted for the longest time up

10   until we got your and his recent letters.  And I take as a

11   given that as parents, they are looking out for the best

12   interests of their son.  I mean that's what parents do and I

13   respect that.

14        But Mr. Bahnasawy has had a different point of view on

15   this very issue that we are discussing today, which is who

16   should represent him.  And if anybody thinks I'm wrong about

17   that, feel free to say it, but I think the record makes that

18   crystal clear.

19        Mr. Edney, you wish to speak again.

20        MR. EDNEY:  Thank you.

21        What I should elucidate on is that my approach, based

22   on the instructions of the parents, was to attempt to

23   communicate with the accuser lawyer to see how we could assist,

24   how we could bring in a psychiatrist, whatever was needed to

25   make it happen.  And there's been no -- I think very limited

HB7VBAHC

1  communication.

2          THE COURT:  With whom?

3          MR. EDNEY:  With legal counsel.

4          MS. SHROFF:  I think he means me, your Honor.

5          THE COURT:  Federal Defenders, Ms. Shroff.

6          MR. EDNEY:  But from the first time I met with -- I'm

7  avoiding saying the name because I don't want to mess it up on

8  the record -- the accused, he was saying different things.  He

9  was interested in having us represent; he was telling -- he had

10  concerns about his treatment, an alleged mistreatment.

11          THE COURT:  His legal treatment or his custodial

12  treatment?

13          MR. EDNEY:  Both.  But communication didn't work with

14  Ms. Fish.

15          THE COURT:  With what?  With who?

16          MS. SHROFF:  I think he's referring to me.  He keeps

17  calling me Ms. Fish, but I think he means me.

18          THE COURT:  Ms. Shroff do you mean?

19          MR. EDNEY:  Shroff, Shroff, Ms. Shroff.

20          I could say to you -- and I'm not here to point

21  fingers.  I could say to you that in almost 30 years of law,

22  I've tried to be a lawyer that works with other lawyers.  And

23  all I got was shut down and could not get any communication

24  from Ms. Shroff at all when I was hearing different things from

25  the client, the accused.  And so that was --

1          THE COURT:  You were talking to Mr. Bahnasawy --

2          MR. EDNEY:  Yes, Bahnasawy.

3          THE COURT:  Wait a minute.  Simultaneously as you were

4     talking to Ms. Shroff?

5          MR. EDNEY:  No, I had very little communication --

6          THE COURT:  I'm sorry?

7          MR. EDNEY:  I've only probably spoken to Ms. Shroff

8     twice.

9          THE COURT:  Well, how many times have you spoken to

10    Mr. Bahnasawy?

11         MR. EDNEY:  Three times.

12         THE COURT:  One was yesterday?

13         MR. EDNEY:  There's one yesterday, that was very, as I

14    described -- Mr. Bahnasawy was very strong about bringing on --

15    didn't wish to have different counsel.

16         THE COURT:  Oh, I understand that.  But I'm trying

17    to -- here's what I'm trying to get at.  You may not know this,

18    but Ms. Shroff, at least to me, and Mr. Bahnasawy, at least to

19    me, have always been very consistent in their positions.

20         One, Ms. Shroff has always said -- she probably said,

21    I don't know, ten times or so, that whoever represented

22    Mr. Bahnasawy was up to Mr. Bahnasawy, the defendant, to

23    decide.  And she always said also that if he decided it should

24    be somebody else, she would respect that decision.

25         And in my experience historically, Mr. Bahnasawy was

HB7VBAHC

```
 1   also very consistent.  And he always said that he wanted

 2   Sabrina to represent him.  So that's what I've been hearing.

 3           Now, where you have heard this difference --

 4           MR. EDNEY:  Yes.

 5           THE COURT:  Hold on a second.

 6           MR. EDNEY:  Sorry.

 7           THE COURT:  -- between Mr. Bahnasawy and Ms. Shroff

 8   would have to have been on the only two occasions before

 9   yesterday that you spoke with him, right, because you've said

10   you only spoke to him twice.

11           MR. EDNEY:  That's correct.

12           THE COURT:  And you're saying that in those two times

13   he was saying that he wanted you to be his lawyer?

14           MR. EDNEY:  No, he was saying to me that he was being

15   pressured by -- by others.

16           THE COURT:  By whom?

17           MR. EDNEY:  By Ms. Shroff.  Told me that a number of

18   times.  He told me other things that he felt pressured to do

19   into changing his mind.  He told me that he was told by

20   Ms. Shroff that I was a bad lawyer.

21           He told me that -- there was a brigadier general,

22   retired U.S. brigadier general, who's a psychiatrist that I met

23   in Guantanamo, whom I wish to introduce to him.  He told me

24   that Ms. Shroff stated that that psychiatrist was not well

25   thought of.
```

HB7VBAHC

 1              So there's all kinds of different stories.  And it was

 2     very difficult to find out what really is going on because of

 3     our communication.  I avoided speaking with Ms. Shroff.  The

 4     first time I met Ms. Shroff she just screamed at me on the

 5     phone.  The second time I spoke with Ms. Shroff, it wasn't

 6     pleasant either.  And so I withdrew from further communications

 7     with her.

 8              THE COURT:  So you've spoken to her historically

 9     twice?

10              MR. EDNEY:  I believe so.  That's true.

11              THE COURT:  Okay.  All right.

12              MR. EDNEY:  Thank you, sir.

13              THE COURT:  Thank you.  That's fine.

14              MS. SHROFF:  Your Honor, did the Court want to hear

15     from me?

16              THE COURT:  At some point I think, yes, for sure.  But

17     I haven't even gotten past Question 2, and there are a lot of

18     questions on here, so I'm not sure we're going to finish this

19     today.

20              MS. SHROFF:  Your Honor, I just want to say very

21     briefly, if I may --

22              THE COURT:  Yes.

23              MS. SHROFF:  -- that I remind the Court that after

24     each correspondence from Mr. Edney, which starts in May of

25     2016, several of which this Court received, all of which we

1    brought to the Court's attention, every single time the Court

2    conducted a full inquiry, regardless of what Mr. Edney talks

3    now about pressure or not pressure.  I think this Court

4    conducted a full inquiry.

5            I also remind the Court that at that time the case was

6    under seal, so I would not then, and for the period of time it

7    remained as sealed, no matter how much Mr. Edney disregarded

8    what I have to say, I would not discuss anything that is under

9    seal.

10           But the point now is Mr. Bahnasawy -- and we've had no

11   communications with him for quite some time now -- wishes to

12   change counsel.  And as the Court correctly pointed out, we do

13   as he says.

14           So if it's possible, your Honor, could I be relieved

15   at this point or not?

16           THE COURT:  I'm afraid not.

17           MS. SHROFF:  Okay.

18           THE COURT:  So I think the answer is no.

19           MS. SHROFF:  I just wouldn't want Mr. Edney to accuse

20   me of pressuring Mr. Bahnasawy, that's all.  I just want to

21   make sure if he wanted me to step out, I'd be happy to do so.

22           THE COURT:  So this is why I was saying before my

23   perception was that -- or maybe I didn't quite say this, but

24   this is not a slam-dunk easy decision as somebody walking in

25   who's represented by, I don't know, Weil Gotshal and then

HB7VBAHC

1   saying, Well, now Davis Polk is going to take over.  He has a

2   big history here, and I'm trying to, first of all, have that be

3   part of the record and understand it so I can make an

4   intelligent decision.

5          Ms. Shroff is quite correct that, as I suggested

6   before, we've all been operating under an order signed by me

7   that the case is sealed, and so appropriately -- and rightly

8   so -- an attorney, either for the government or for the

9   defense, had certain serious limitations on what they could

10  discuss and with whom and what documents they could share and

11  with whom.

12         So there is a question here which I posed to

13  Mr. Edney, which I'll ask you, Mr. Frisch.  I was under the

14  impression that you had said at some point -- counsel for the

15  government is suggesting it's in the August 15, 2017 letter --

16  that your firm is local counsel to Mr. Edney.  Is that so or

17  not so?

18         MR. FRISCH:  Actually that is in the letter.  It was

19  so.  I think if I had an opportunity to talk with Mr. Edney, we

20  discussed that with him, he may not have a recollection of that

21  particular discussion and that submission, but that was -- that

22  was correct when we said it, Mr. Edney was aware of it, and the

23  representation was accurate.

24         THE COURT:  Is it still the case?

25         MR. FRISCH:  No.

HB7VBAHC

1          THE COURT:  It's not.  Okay.

2          And just again so it's clear, because this does go to

3     the part of things in my -- in the same letter, I think it was

4     August 15, you advised, I think, Mr. Patton, who's the head of

5     Federal Defenders, that if Mr. Bahnasawy requested that your

6     firm represent him in the case, you said that as of August 15,

7     I think, you would decline to represent him; is that right?

8          MR. FRISCH:  As of that date, that's absolutely

9     correct, yes, Judge.

10         THE COURT:  So that's August 15 of 2017.  And just

11    again so it's clear to me, what's changed between then and now?

12         MR. FRISCH:  With due respect, I'm going to answer

13    your question, I think it's a question for Mr. Bahnasawy.

14         THE COURT:  I'm going to ask him the same thing.

15         MR. FRISCH:  My answer is that he has communicated to

16    us that he wants us to represent him.  We've met with him.  We

17    have satisfied ourselves that it's unequivocal.  That's it.  He

18    has expressed that to us.  That's the difference.

19         THE COURT:  That was post August 15 of this year,

20    2017?

21         MR. FRISCH:  Yes.  That's right.

22         THE COURT:  Do you remember roughly when -- I'm not

23    going to hold you to it.

24         MR. FRISCH:  No, I understand.  It's been a very busy

25    past couple of months.  I was on trial for a while.

HB7VBAHC

1        THE COURT:  Okay.

2        MR. FRISCH:  It has been a -- I would say it's a

3  period of at least -- I also don't want to give a

4  seat-of-the-pants answer to a judge's question.  I would say

5  it's been at least a few weeks, probably going back into -- as

6  best as I can estimate it right now, I would say early

7  October/late September, in that time period.

8        THE COURT:  I don't remember the date either, but my

9  recollection is around that time, because just so you know --

10  and I've said it before -- that is one of the things that

11  spurred me to open in the case, because I got a letter from

12  Mr. Bahnasawy, and I think from you as well, about that

13  representation.  So that's when -- coincided exactly, no, but

14  that's about the time that I decided that it was very important

15  to get the docket unsealed.

16        MR. FRISCH:  I understand.

17        The light I can shed in terms of the chronology, I had

18  a trial that started on October 15th or 16th, I don't remember

19  which was the Monday, I think it was the 16th, and this came up

20  before that.  I remember that.  I had to sort of step out and

21  be occupied for a week or so.

22        THE COURT:  And the record will show whatever date it

23  is.

24        All right.  Now I'm going to turn to Mr. Bahnasawy and

25  ask him a series of questions.  I'm going to ask Christine

HB7VBAHC

1    Murray to swear him in before he answers the questions.

2           (Defendant sworn)

3           THE COURT:  We've spoken in the past.  Mr. Bahnasawy,

4    I may have asked you some of these questions already, but bear

5    with me; it's important that I ask again.

6           So, first of all, how old are you?

7           THE DEFENDANT:  19.

8           THE COURT:  How far did you go in school?  To what

9    grade?

10          THE DEFENDANT:  Grade 11.

11          THE COURT:  Was that in Canada?

12          THE DEFENDANT:  Yeah.

13          THE COURT:  You're a citizen of Canada; is that right?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Are you currently receiving medical

16   treatment or taking medication?

17          THE DEFENDANT:  Yes.  I see a psychiatrist in the jail

18   and I take the antipsychotic Geodon.  It's called something

19   Geodon.

20          THE COURT:  And any other medical conditions that you

21   have?

22          THE DEFENDANT:  No.

23          THE COURT:  So you don't see another doctor, or do

24   you, for any other health conditions?

25          THE DEFENDANT:  No.

HB7VBAHC

```
 1            THE COURT:  Okay.  And have you taken any drugs or

 2   medicine or pills, including the antipsychotic medications, in

 3   the past 24 hours?  Do you take them daily?

 4            THE DEFENDANT:  Yeah.

 5            THE COURT:  Okay.  Do they in any way -- in your

 6   estimation, do they affect your ability to understand what's

 7   happening here in court today?

 8            THE DEFENDANT:  No.

 9            THE COURT:  Do you understand what we are all about?

10            THE DEFENDANT:  Yes.

11            THE COURT:  And what I'm trying to accomplish today?

12            THE DEFENDANT:  Yeah, I understand.

13            THE COURT:  So now we get to the issue of who is your

14   counsel.  I know that Federal Defenders has been your counsel

15   from the beginning of the case.  Is that fair to say?

16            THE DEFENDANT:  Yes.

17            THE COURT:  This you may not know, but to the extent

18   that I'm supervising your case, so to speak, presiding over it,

19   I have asked Ms. Shroff and Federal Defenders to continue to be

20   your counsel even while we're having this proceeding with

21   respect to Mr. Wright and Mr. Edney and Mr. Frisch.

22            Do you understand that?

23            THE DEFENDANT:  Yes.

24            THE COURT:  Is it fair to say, I've said it before,

25   I'm pretty certain of it, you have advised me in the past that
```

HB7VBAHC

1    you wish to have Federal Defenders, particularly Ms. Shroff, as

2    your attorney at least at some period of time, right?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And there were some occasions that you

5    suggested to me that even if -- or not stated, not suggested,

6    that even if new counsel came in, it would be helpful if

7    Ms. Shroff could be co-counsel or also counsel?

8              THE DEFENDANT:  Yeah.

9              THE COURT:  You said that a couple of times to me, I

10   think; is that right?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Have you been satisfied with the

13   representation of Federal Defenders?

14             THE DEFENDANT:  No.

15             THE COURT:  When did you become dissatisfied with it?

16             THE DEFENDANT:  Since I wrote that letter -- or like

17   after the letter, a little bit after the letter I wrote.

18             THE COURT:  Oh, the one in which you asked that you

19   get new counsel?  Let me get the date of that.  The one you

20   wrote a handwritten letter from me to you?

21             THE DEFENDANT:  Yes.  I mean after that, a little bit

22   after.

23             THE COURT:  Yeah, no, I just want to get the time

24   frame down.  I'm going to get a copy of it so we could all take

25   a look at it.

1          So there is a letter dated -- I believe it's -- it's

2     in your hand, September 24.  Does that sound right?  I can't

3     make out -- I'll show it to you; you can tell me if it's a four

4     or a seven.  Looks like a four.

5          It says:  "Dear Judge Berman, I am writing this

6     concerning the issue about my representation.  My mom and dad

7     came to visit me last Friday and were very distressed and sad

8     about me not granting permission for added counsel, Dennis

9     Edney, Jason Wright, and Andy Frisch.  My mom was crying and

10    begging me.  And I feel too bad to be doing this to them.

11         "I also now think that granting these lawyers, Dennis

12    and his team, permission to enter the case by visiting me,

13    talking in court, and getting case files, would be of no harm,

14    but actually to my benefit.  I also really don't want to see my

15    parents in this horrible state, so I please ask you to let

16    Dennis Edney and his team enter the case alongside the Federal

17    Defenders, as was requested by them in their letter to the

18    Court.  This would be greatly appreciated.  Sincerely."

19         Is that the letter you're talking about?  I'm going to

20    ask Christine to show you just to confirm the date.  I think

21    it's a four, but you could tell me.  Take a look at it and tell

22    me if that's the letter you were referring to that you wrote to

23    me?

24              THE DEFENDANT:  Yeah, that's a four.

25              THE COURT:  Is that a four?

34

1          THE DEFENDANT:  Mm-hmm.

2          THE COURT:  Okay.  That's the letter you were

3    referring to when you said you had become or you became

4    dissatisfied?

5          THE DEFENDANT:  Yeah, after that.

6          THE COURT:  After that letter.  Okay.  Fair enough.

7          And did you reach out to Mr. Wright and Mr. Frisch at

8    that time or did they reach out to you to represent you?

9          THE DEFENDANT:  I reached out --

10          THE COURT:  Or was it your parents?

11          THE DEFENDANT:  I reached out to Jason Wright.  I

12    reached out to Jason Wright by email.

13          THE COURT:  By email.  At or about that time?

14          THE DEFENDANT:  Yeah.

15          THE COURT:  And you asked him to join the case as your

16    attorney?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Was that also true of Mr. Frisch?  Did you

19    mean to bring him in at that time, too?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And also Mr. Edney?

22          THE DEFENDANT:  Yeah.

23          THE COURT:  Okay.  And here in the letter -- that's

24    essentially what you're saying in the letter as well.  In the

25    letter you also say "alongside the Federal Defenders."  Is that

HB7VBAHC

1    still your view?

2              THE DEFENDANT:  No.

3              THE COURT:  And tell me when that changed and how did

4    that change.  So that would be between September 24, or

5    sometime thereafter, and today.  That is not your intention

6    anymore?

7              THE DEFENDANT:  Yeah.

8              THE COURT:  And why is that?  I mean how did that

9    happen?

10              THE DEFENDANT:  I just like stopped liking the Federal

11   Defenders.

12              THE COURT:  I see.  After September 24?

13              THE DEFENDANT:  Yeah.

14              THE COURT:  Okay.  And that's it?  I mean no dispute

15   with them or anything else?

16              THE DEFENDANT:  No.

17              THE COURT:  You just preferred to have these three

18   gentlemen as your lawyers in place of them?

19              THE DEFENDANT:  Yes.

20              THE COURT:  And you've heard the discussion, but

21   what's your recollection as to how long you have known

22   Mr. Frisch?  Or knew about him, I guess.

23              THE DEFENDANT:  I knew about him like maybe four, five

24   months, something like that.  Four or five months.

25              THE COURT:  Could it even have been longer?

HB7VBAHC

1        THE DEFENDANT:  Yeah, it could have been longer, yeah.

2        THE COURT:  And is that the same for Mr. Wright, if

3   you remember?

4        THE DEFENDANT:  I knew him a little bit longer.

5        THE COURT:  You knew Mr. Wright a little longer than

6   you knew Mr. Frisch?

7        THE DEFENDANT:  Mm-hmm.  Yeah.

8        THE COURT:  Up until now, has either of them

9   represented you in connection with any other matters that you

10  have?

11       THE DEFENDANT:  No.

12       THE COURT:  Just this case, right?

13       THE DEFENDANT:  Yeah.

14       THE COURT:  Okay.  And is your choice now to be

15  made -- to be that Mr. Frisch and Mr. Wright represent you, is

16  that your choice?

17       THE DEFENDANT:  Yes.

18       THE COURT:  And Mr. Edney as well?

19       THE DEFENDANT:  Yes.

20       THE COURT:  And is that of your own free will, that

21  decision?

22       THE DEFENDANT:  Yes.

23       THE COURT:  And it's voluntary?

24       THE DEFENDANT:  Yes.

25       THE COURT:  Not a function of pressure from your

1   parents, for example?

2            THE DEFENDANT:  No.

3            THE COURT:  At one time you did feel pressure from

4   your parents, you advised me, I'm pretty sure, even in this

5   letter.

6            THE DEFENDANT:  Yeah.

7            THE COURT:  But that's not true anymore or what?

8            THE DEFENDANT:  Yeah, that's not true anymore.

9            THE COURT:  Because, from reading your letter, one

10  gets the impression that you changed your mind because you felt

11  badly that you were not respecting your parents' wishes.

12  That's what the letter seems to say to me.

13            THE DEFENDANT:  Yeah, at the time of the letter, yeah.

14  It wasn't really pressure, it was just -- they were one of the

15  factors of me wanting to change.  But I didn't see it as

16  pressure really, because like my parents are going to stay as

17  my parents no matter what, so there's no pressure from them to

18  change anything.  But it was just one of the factors.  And then

19  after that I just didn't want Federal Defenders anymore for my

20  own will, for my own thinking.

21            THE COURT:  I got it.  Okay.

22            Has anyone threatened you with respect to the question

23  of who your counsel is or should be?

24            THE DEFENDANT:  No.

25            THE COURT:  Anybody made any promises to you or

HB7VBAHC

1    inducements to you to cause you to want to change counsel?

2            THE DEFENDANT:  No.

3            THE COURT:  Do you pay Mr. Frisch or Mr. Wright or

4    Mr. Edney for representing you, yourself?

5            THE DEFENDANT:  No.

6            THE COURT:  Do you know who does?

7            THE DEFENDANT:  Yeah, my parents.

8            THE COURT:  And is it your expectation that they will

9    continue to pay for your counsel?

10           THE DEFENDANT:  Yeah.

11           THE COURT:  Are you aware that at least for some time

12   that Mr. Frisch and Mr. Wright and Mr. Edney were counsel for

13   your parents --

14           THE DEFENDANT:  Yeah.

15           THE COURT:  -- and not for you?

16           THE DEFENDANT:  Yeah, me.

17           THE COURT:  I mean that's what they were saying.

18           THE DEFENDANT:  For my parents relating to my case.

19           THE COURT:  Relating to your case, of course.  But

20   they were retained, is the expression that we use, by your

21   parents as counsel to them.  You were aware of that?

22           THE DEFENDANT:  Yes.

23           THE COURT:  And do you know if they still are?

24           THE DEFENDANT:  I'm not sure.

25           THE COURT:  Okay.  And you understand that in every

1    criminal case, of course this one is one, you are entitled to

2    be represented by an attorney or attorneys whose loyalty to you

3    is undivided?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And do you feel that you can accomplish

6    that with Mr. Frisch and Mr. Wright and Mr. Edney?

7              THE DEFENDANT:  Yes.

8              THE COURT:  You're entitled to be represented by

9    attorneys who are not subject to any considerations that would

10   intrude upon the attorney's loyalties to you.

11             Do you agree with that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  So what would happen, for example, if

14   something is coming up in the case and you have one opinion as

15   to how you should proceed and your parents have a different

16   opinion as to how you should proceed, how would you go about

17   resolving that?

18             THE DEFENDANT:  I go with my opinion.

19             THE COURT:  You what?

20             THE DEFENDANT:  I mean I go with my opinion.

21             THE COURT:  So you'd go with -- now how about your

22   lawyers, would they go with your opinion or your parents'

23   opinion?

24             THE DEFENDANT:  They'd go with my opinion.

25             THE COURT:  So this next question relates to a

HB7VBAHC

1   situation such as this one where a third party is paying the

2   legal fees for another person.  So do you understand that when

3   someone other than yourself is paying the lawyers that

4   represent you, which is the case here, right, your parents are

5   paying the lawyers that represent you, Mr. Frisch, Mr. Wright,

6   and Mr. Edney.

7           THE DEFENDANT:  Yes.

8           THE COURT:  It's possible that whoever is paying, may

9   have interests different from yours.

10          THE DEFENDANT:  Yes.

11          THE COURT:  And that it's possible in some

12  circumstances, I'm not suggesting that it's true here, I don't

13  know if it is, that the lawyers' judgment might be influenced

14  by the wishes of whoever is paying the bill?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Or that what the lawyer thinks are the

17  wishes of whoever is paying the bill rather than yourself.  Do

18  you understand that possibility?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you understand in a situation such as

21  this, having your lawyer or lawyers paid by someone other than

22  yourself creates a risk that you might not be acting -- that

23  they, the lawyers, may not be acting solely in your interests?

24  Do you see that possible risk?

25          THE DEFENDANT:  Yeah.

HB7VBAHC

1          THE COURT:  So, for example, Mr. Frisch, Mr. Wright,

2     they have a desire to advise you to follow a certain course of

3     action that your parents may suggest, that may be different

4     than your own interests.  You realize that?

5          THE DEFENDANT:  Yeah, in theory, yes, but I don't

6     think it is in the situation.

7          THE COURT:  Fair enough.  It has been up until now, I

8     think.

9          THE DEFENDANT:  Yeah, but I mean with the lawyers

10     doing what I want and not what my parents want.

11          THE COURT:  No.  Your parents maybe having different

12     suggestions for you to follow than you might have had up until

13     now working with Ms. Shroff.

14          THE DEFENDANT:  Yes.

15          THE COURT:  I don't remember, but have you spoken with

16     any lawyer other than Mr. Frisch, Mr. Wright, or Ms. Shroff and

17     the Federal Defenders about the risks of being represented by

18     Mr. Frisch and Mr. Wright in this case?

19          THE DEFENDANT:  No.

20          THE COURT:  In other words, sometimes referred to as a

21     third opinion or a second opinion.  In other words, have you

22     ever consulted with anybody about who should represent you

23     other than the people, Ms. Shroff, Mr. Frisch, Mr. Wright, and

24     Mr. Edney, have you ever consulted with any other lawyer about

25     that?

HB7VBAHC

1          THE DEFENDANT:  No.

2          THE COURT:  Do you realize that you have the right to

3     consult with such a lawyer other than Mr. Frisch or Mr. Wright

4     or Federal Defenders to determine whether you wish to have

5     Mr. Frisch and Mr. Wright represent you?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you realize that if you want, I could

8     give you the opportunity to do so?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Do you understand that even if you can't

11     afford to pay such a lawyer, that I would appoint someone like

12     that to counsel you, to consult with you about this issue of

13     third parties paying for your lawyers?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you think it would be helpful to have

16     such a consultation?

17          THE DEFENDANT:  No.

18          THE COURT:  You don't?

19          THE DEFENDANT:  No.

20          THE COURT:  Why is that?

21          THE DEFENDANT:  Because I think I understand

22     everything well already.

23          THE COURT:  Including these potential conflicts?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Nevertheless, you don't want to consult

HB7VBAHC

1    with another lawyer?

2              THE DEFENDANT:  No.

3              THE COURT:  Okay.

4              And you understand that you have the right not to have

5    any particular lawyer, whether it's Ms. Shroff or Mr. Frisch or

6    Mr. Wright, represent you.  You make that determination, right?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And so what would happen, for example, if

9    you wanted to not be represented by Mr. Frisch or Mr. Wright or

10   Mr. Edney, what would happen then?

11             THE DEFENDANT:  I just change lawyers.

12             THE COURT:  You would what?

13             THE DEFENDANT:  I would change lawyers.

14             THE COURT:  And how would you do that?

15             THE DEFENDANT:  I write to you a letter.

16             THE COURT:  And what, asking me to find you another

17   lawyer?

18             THE DEFENDANT:  No.

19             THE COURT:  I don't want to put words in your mouth.

20   What would you do?  You would write me a letter.  What would

21   you say?

22             THE DEFENDANT:  I'd say that I want another lawyer.

23   Can I change lawyers.

24             THE COURT:  Do you understand that nobody, including

25   me, can say with any degree of certainty what the cost of this

HB7VBAHC

1    case will be going forward?

2              THE DEFENDANT:  Yes.

3              THE COURT:  I can't predict.  I mean I have an idea, I

4    think you have an idea.  We're heading towards sentencing, etc.

5     But beyond that, I don't think either of us -- I certainly

6    can't predict where the case is headed.  Do you realize that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And I'm the first to tell you that I would

9    be unable to foresee all the ways in which you could be

10   disadvantaged by proceeding with Mr. Frisch, Mr. Wright, or

11   Mr. Edney.  Do you realize that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  I say this not to be disrespectful to

14   anybody, but it's important.  So do you understand that, in my

15   view, and based on my experience as a judge, I might very well

16   take the position that it's not advisable to proceed with an

17   attorney who has a potential conflict of interest?

18             THE DEFENDANT:  Yes, I understand.

19             THE COURT:  Do you understand that in my opinion it

20   would be a good idea for you to consult with another lawyer to

21   get independent advice as to how you should proceed with your

22   representation?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And that would be at no expense to you if

25   you wanted to do that.

HB7VBAHC

1              THE DEFENDANT:  Yes.

2              THE COURT:  I would appoint somebody at no expense.

3              Do you understand that if I grant the application,

4    which is that you proceed with Mr. Frisch and Mr. Wright and

5    Mr. Edney at your request, you would not be able to make any

6    argument in the future based on this potential conflict of

7    interest that I have been discussing with you, namely one based

8    on the fact that someone other than yourself is paying for your

9    counsel?

10             THE DEFENDANT:  Yes.

11             THE COURT:  So just to make it clear, how do you

12   understand what I have been describing as a potential conflict

13   of interest in your words?

14             THE DEFENDANT:  Because my parents are paying for it,

15   so they are going to have different interests than mine.  And

16   the lawyer might take their interests instead of mine.

17             THE COURT:  And is there anything else that I have

18   talked about that you would like me to explain in further

19   detail?

20             THE DEFENDANT:  No.

21             THE COURT:  So I'm going to stop here for today.  I'm

22   going to ask you to think over what we've discussed here today.

23             I'm going to ask counsel, Ms. Shroff or Mr. Frisch or

24   counsel for the government, to order a copy of the transcript

25   of today's proceeding and to make sure -- Mr. Bahnasawy is

HB7VBAHC

1    permitted to review transcripts at MCC?

2            MS. SHROFF:  He is, your Honor.

3            May I, your Honor?

4            THE COURT:  Well, before you do, historically, how

5    does that happen?

6            MS. SHROFF:  We order the transcript, and historically

7    we go visit him and give it to him.  But we have not done so in

8    light of the recent proceedings.  We have not had any visits

9    with Mr. Bahnasawy.  So we just drop it off in the legal

10   mailbox.

11           THE COURT:  Well, I just would like somebody --

12   Mr. Frisch can do it -- to take it to him and share with him a

13   copy of the transcript of today's proceeding so he can have a

14   chance to mull it over one more time.

15           MS. SHROFF:  So, your Honor, as the Court knows, the

16   Federal Defenders has represented him, Abdulrahman Bahnasawy

17   for some time.  I'm sure the Court is aware of all the experts

18   that we have retained.  The fact that we did not retain an

19   expert of Mr. Edney's choosing is of no moment and of no

20   concern to us.  We are very confident in the choices that we

21   have made in this case.

22           We have made sure to represent Mr. Bahnasawy to the

23   best of our abilities.  At this point it's clear to us, your

24   Honor, with most respect to what the Court is suggesting now,

25   it seems very clear that Mr. Bahnasawy wishes to continue with

HB7VBAHC

1   the representation of Mr. Frisch and Mr. Wright.  And so with

2   all respect, your Honor, I ask that the Federal Defenders

3   office be relieved as his counsel.  We have provided to

4   Mr. Frisch all of the documents, short of the first draft of

5   the presentence report, which our office did mail to the

6   client.

7          In addition, your Honor, one last thing I forgot is

8   John Norris served as our local counsel in Canada.

9          THE COURT:  John?

10          MS. SHROFF:  Norris, N-O-R-R-I-S.

11          Just so the Court is aware, we covered all bases.

12   Should this ever come up, I can elaborate further, but I don't

13   think there's a need right now.

14          THE COURT:  Is he a federal defender?

15          MS. SHROFF:  He is not, your Honor.  He is a very

16   well-respected attorney who specializes in cases like this.

17   And the Federal Defenders office did retain him to make sure

18   that Mr. Bahnasawy's interests in Canada were properly

19   evaluated and properly taken care of.

20          THE COURT:  So most respectfully, I'm going to deny

21   your request at this time without prejudice.  And the reason is

22   that I'm going to close the proceedings for today.  I'm going

23   to ask all of you and Mr. Bahnasawy to reflect on what we

24   discussed here today.  I'm going to set a date in, I don't

25   know, a week or so, so we can review the transcript and so I

HB7VBAHC

1    also can review what my responsibilities and role is, if any,

2    with respect to this issue of selection of counsel.

3            So I'm going to ask you to remain as co-counsel for

4    the time being with Mr. Frisch and Mr. Wright as well.  And I

5    know that all of you will be able to cooperate in that

6    endeavor.

7            The letter -- I think I misspoke before, Mr. Frisch.

8    The letter to the Court was from Jason Wright back on May 2nd,

9    2017.  That was the letter in which he concluded that based on

10   my discussions with him, meaning Mr. Bahnasawy, and in light of

11   the information provided to me, I wish to inform you -- this

12   was David Patton.  I wish to inform you that if so requested by

13   your client, I would respectfully decline to represent him.

14           So all right.  Does anybody else want to add any --

15   government, did you want me to pose any other questions?

16           MS. TEKEEI:  Not at this time, your Honor.  Thank you.

17           THE COURT:  Okay.  Anybody else want to add anything?

18           Mr. Edney.

19           MR. EDNEY:  Thank you.

20           THE COURT:  If you could --

21           MR. EDNEY:  Thank you, sir.

22           With regards to a returning date before you, I should

23   advise you that I'm tonight flying into London.  I will be

24   departing from there on the 15th.  So I don't know what you

25   require of me within that period of time.

HB7VBAHC

1          THE COURT:  It's up to Mr. Frisch.  I will leave that

2    to him, whether you need to be at the next session.

3          Just so I'm understanding though, Mr. Bahnasawy, are

4    you seeking to retain the three attorneys at this time,

5    Mr. Edney, Mr. Frisch, and Jason Wright?

6          THE DEFENDANT:  Yes.

7          THE COURT:  So I guess then it should be at a time

8    that you're available, unless you advise your co-counsel.

9          MR. EDNEY:  To be my agent.

10          THE COURT:  So you don't have to.  Okay.

11          MR. EDNEY:  Thank you.

12          THE COURT:  So let me give you a date then.

13          Is everybody aware, particularly new counsel, that we

14    have a sentencing scheduled for December 12, 2017 at 10 a.m.?

15          MR. FRISCH:  We're aware of the date, yes, Judge.

16          THE COURT:  And is it your intention to be ready for

17    sentencing on that date?

18          MR. FRISCH:  No, Judge.  As I said the last we were

19    before your Honor, we received a lot of material from the

20    Federal Defenders that we have begun looking through.  To the

21    extent that our substitution is permitted, what I expect I

22    would propose to the Court is that we appear on December 12th

23    and tell your Honor where we are, give you a status, and talk

24    about scheduling then, when we'll be much further up to speed

25    than we are right now.

HB7VBAHC

1      THE COURT:  You don't think you could be ready for

2  sentencing by December 12th?

3      MR. FRISCH:  Correct.

4      THE COURT:  You don't have any idea how long it would

5  take for you to be ready for sentencing?

6      MR. FRISCH:  I can't say, Judge, because this is

7  obviously -- there's obviously some complicated issues in this

8  case.  There's a lot of material to review.  So I'd be adverse

9  to predicting that without becoming further educated about

10  what's in the Federal Defenders' file.

11      THE COURT:  Okay.  I'm going to put this matter over

12  to decide this issue of representation, issues that we've

13  discussed today, if you're available, on November 21st at

14  12:30.  Is that a good date?

15      MS. SHROFF:  Your Honor, can I just have a second?

16      THE COURT:  Sure.

17      (Pause)

18      MR. FRISCH:  Your Honor, can I have a moment to talk

19  to Mr. Bahnasawy's parents about their ability to travel on

20  that date?

21      THE COURT:  Sure.

22      (Pause)

23      MR. FRISCH:  Your Honor, the only potential issue is

24  that I have to be before -- on the 21st, before Judge Batts at

25  2:30.  If I can make that court appearance, then 12:30 on the

HB7VBAHC

1    21st is fine.

2              THE COURT:  That would be fine.

3              Last point:  I just want to reemphasize to

4    Mr. Bahnasawy, if you wish to have -- Mr. Bahnasawy.  If you

5    wish to have me appoint another attorney to help you understand

6    and/or make this decision about counsel between now and the

7    21st of November, I would be happy to do so.  All you'd have to

8    do is say yes.  Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Okay.  All right.

11             So I think that concludes our work for today.

12             Thanks very much.  Nice to see you all.

13             MS. TEKEEI:  Thank you, your Honor.

14                        *    *    *