THE LAW OFFICES OF
# ANDREW J. FRISCH, PLLC

40 FULTON STREET
23rd FLOOR
NEW YORK, NEW YORK 10038
(212) 285-8000
FAX: (646) 304-0352

JASON D. WRIGHT
ADMITTED IN NEW YORK, VIRGINIA
AND THE DISTRICT OF COLUMBIA
OF COUNSEL

March 22, 2018

*By ECF*
The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re: *United States v. Abdulrahman El Bahnasawy*
> Criminal Docket No. 16-376 (RMB)

Dear Judge Berman:

  On behalf of Mr. El Bahnasawy, I write in response to the Court's order of March 8, 2018, to provide a list of facilities of the Bureau of Prisons ("BOP") which the Court may recommend for his designation.

  Since the date of the Court's order, defense counsel have conferred with and made various inquiries of the prosecutors, which they have relayed to the office of BOP counsel and attempted to answer. Meanwhile, defense counsel have reported BOP's answers to Todd Bussert, the defense expert on BOP whose declaration was appended to our sentencing submission, for his input and guidance. The information below is the product of these conversations.

  Based on these communications, we have refined the proposed language of our requested recommendation for BOP designation as follows:

> The Court recommends that the defendant be designated to FCI Butner-Medium to facilitate greater proximity to mental health services. To the extent BOP finds that the defendant should be housed at a Mental Health Care Level 2 facility, the Court recommends FCI McKean-Medium or FCI Schuylkill-Medium, both in Pennsylvania, to facilitate regular visitation with his parents and sister, who live in Ontario. The Court strongly recommends that the defendant not be housed at a contract facility for non-U.S.

Case 1:16-cr-00376-RMB   Document 110   Filed 03/22/18   Page 2 of 3

citizens given both his age and mental health condition. The Court also recommends that the defendant participate in intensive substance abuse treatment.

BOP has four classifications of Mental Health Care Level for defendants. The defendant has been classified Care Level 2 at the Metropolitan Correctional Center, and that classification is unlikely to change unless the defendant's mental health deteriorates materially over a sustained period. The relevant difference between Care Levels 2 and 3 is the frequency of clinical interventions, meaning actual contact with a clinician. Care Level 2 provides for quarterly or monthly clinical interventions, which are typically brief inmate-clinician meetings, and Care Level 3 provides for more frequent interventions, but also typically brief. Care Level 4 is reserved, in substance, for inmates whom BOP determines require a level of care commensurate with psychiatric hospitalization.

As previously noted [Bussert Declaration at 7-8], a study of the Department of Justice in 2006 concluded that 45% of the inmate population of BOP had mental health issues [see U.S. Department of Justice, Bureau of Justice Statistics, *Mental Health Problems of Prison and Jail Inmates*, Sept. 2006[1]], but BOP classified less than 5% of inmates at Care Levels 2, 3 and 4. GAO, Bureau of Prisons, *Timelier Reviews, Plan for Evaluations, and Updated Policies Could Improve Inmate Mental Health Services Oversight*, July 2013, at 9.[2] For example, of a total population of about 200,000 in 2013, BOP classified 589 inmates at Care Level 3, and 5,793 inmates at Care Level 2. *Id.* Despite nominal BOP efforts from time to time, intensive individualized services, such as provided by a psychologist, social worker or counselor, are costly, not adequately funded and not available.

We have identified FCI Butner-Medium, a Care Level 3 facility, because we believe it can provide more attention and medical contact than a Care Level 2 facility and is adjacent to a medical center, providing more immediate help in the event of an unanticipated severe episode warranting greater intervention. We have alternatively identified FCI McKean-Medium and FCI Schuylkill-Medium as Care Level 2 facilities based on their proximity to the defendant's family in Ontario.

Mr. Bussert believes that BOP will designate the defendant to a contract facility for non-U.S. citizens. Such facilities provide medication and clinical interventions, but we believe of a lower quality than FCI's because they are operated by private contractors where cost becomes even more of a factor. As previously noted [Bussert Declaration at 9-10], the Obama Administration sought to close contract facilities because of range of problems.

Meanwhile, the medical professionals who have evaluated the defendant since his arrest continue to believe that he requires combined and preferably individualized

---

[1] Available at https://www.bjs.gov/content/pub/pdf/mhppji.pdf.

[2] Available at https://www.gao.gov/assets/660/655903.pdf.

2

psychopharmacological and psychosocial therapies going forward. While such level of accommodation does not appear reasonably likely in a correctional setting, the facilities discussed above are identified based on the belief that they are the best options within BOP.

The Government has advised me that it takes no position as to the designation of the defendant, which, pursuant to 18 U.S.C. § 4082 and 28 C.F.R. § 0.96, is within the purview of the BOP and its Designation and Sentence Computation Center. The Government has no objection to defense counsel's request that the Court make a recommendation as to the defendant's designation, which the Government understands the BOP may consider in its designation evaluation process.

Respectfully submitted,

/s/
Andrew J. Frisch

cc: George Turner
    Negar Tekeei
    Sabrina Shroff