```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

           v.                           16 CR 376 (RMB)

ABDULRAHMAN EL BAHNASAWY,

              Defendant.

------------------------------x
                                        New York, N.Y.
                                        November 15, 2018
                                        11:30 a.m.

Before:

              HON. RICHARD M. BERMAN,

                                        District Judge


                      APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
NEGAR TEKEEI
GEORGE TURNER
     Assistant United States Attorneys
        -and-
JOSHUA CHAMPAGNE
U.S. Department of Justice, Counterterrorism Section

FEDERAL DEFENDERS OF NEW YORK
     Attorneys for Defendant
SABRINA SHROFF
CLAY KAMINSKY
        -and-
ANDREW FRISCH
     Attorney for Defendant
```

1          (Pages 2-69 sealed)

2          (In open court)

3          THE COURT:  We have earlier this morning adjourned the
4  bulk of the sentencing in this case to Tuesday, November 20, at
5  11 a.m.  I just have some preliminary matters to discuss with
6  counsel in anticipation of Tuesday, and they are as follows:

7          You should, as I mentioned to counsel earlier, not
8  take my remarks as an indication of what the sentence will be
9  in this case.  I'm still considering some of the 3553(a)
10 factors, and have not made that determination yet.  The
11 sentencing in this matter is a complicated one.  Mr. El
12 Bahnasawy is a Canadian citizen, 20 years of age, and he has
13 pled guilty to seven very serious crimes related to terrorism.

14         Count One is conspiracy to use weapons of mass
15 destruction, which carries a guideline range, so to speak, of
16 life imprisonment.

17         Count Two is a conspiracy to commit acts of terrorism
18 transcending national boundaries, and also carries life
19 imprisonment.

20         Count Three, conspiracy to bomb a place of public use
21 and public transportation system, similarly carries a life
22 imprisonment sentence.

23         Count Four is a conspiracy to provide material support
24 to terrorists.  That count has a statutory maximum of 15 years
25 of imprisonment.

Count Five, providing material support to terrorists. That count has a 15-year statutory maximum.

Count Six, conspiracy to provide material support and resources to a designated foreign terrorist organization, that has a 20-year statutory maximum.

And then, finally, Count Seven, the substantive count of providing material support and resources to a designated foreign terrorist organization. That also carries a 20-year statutory maximum.

There's also a maximum term of lifetime supervised release that relates to Counts One through Seven.

So, obviously, seriousness of the crime or crimes is an unmistakable principle, 18 United States Code section 3553(a) factor, to be considered at the time of sentencing. And it's understood by everyone. I will point that out on Tuesday.

I'm also fully aware of, and will consider carefully in my sentencing, the facts, among others, that include these:

(a) Mr. El Bahnasawy has since early childhood had mental health issues. He has a diagnosis currently of bipolar disorder with psychotic features. He has been treated throughout his life, most of his life, as an inpatient and outpatient in Kuwait, in Egypt, and in Canada, and while incarcerated here in the United States since the time of his arrest. I think it's fair to say that those treatments have

1  had mixed results.

2  Second, Mr. El Bahnasawy also has serious drug
3  addictions, starting roughly at the age of 14, and involving
4  almost every kind of drug, including marijuana, K2, cocaine,
5  MDMA, LSD, amphetamines, methamphetamine, inhalants, including
6  butane, air fresher canisters and CO2 tank.  Also includes
7  opiate pills, codeine, hydrocodone, Suboxone, heroin, and DXM.
8  When drugs were unavailable to him, he reportedly ingested
9  tablespoons of nutmeg in order to get high.

10  Mr. El Bahnasawy has also been treated, again with
11  mixed results, in multiple non-U.S. facilities for his
12  addictions prior to his arrival and arrest in the United States
13  in May, 2016.

14  And thus, I will also be considering these
15  co-occurring issues in my sentencing, among other factors.

16  The second point I'd like to make this afternoon
17  relates to defense counsel's submission, or Mr. Frisch is
18  co-counsel, and he's made an excellent submission which is
19  dated March 1, 2018.

20  I take some issue with one comment, this is not a
21  major issue, but I'll mention it.  So, at page 22, Mr. Frisch
22  says that: "The Court's fashioning of a hybrid representation,"
23  and here he's talking about the fact that I directed in
24  November I believe of 2017 that there be co-counsel in this
25  case, that is to say Federal Defenders was assigned to Mr. El

1  Bahnasawy at or about the time of his arrest in 2016, and
2  there's a history here in the transcripts which you can read
3  for yourself, but, in November 2017, Mr. Frisch and an
4  associate of his joined the case as counsel.  I think it's fair
5  to say that both counsel preferred to be sole counsel, but in
6  any event, following a hearing, extensive hearings, I issued an
7  order directing that there be co-counsel for the duration of
8  the case.

9  And, anyway so, what Mr. Frisch has said in his
10 submission is that, with respect to this "hybrid representation
11 and its stated rationale is some evidence of the Court's view
12 that Abdulrahman El Bahnasawy was too immature or vulnerable to
13 pressure to be fully accommodated, or that delays in his
14 individuation contributed to lack of clarity in his
15 decision-making."  This is quoting from the submission.  And
16 one more sentence.  "those same issues underscore the extent of
17 his culpability," this is Mr. Frisch talking, "for the crime to
18 which he's pled guilty, and the wisdom of imposing a short
19 period of confinement can immerse himself in proper treatment."

20 Let me read that again.  "The same issues underscore
21 the extent of his culpability for the crime to which he pled
22 guilty, and the wisdom of imposing a short period of
23 confinement so that he can immerse himself in proper treatment
24 in Canada."

25 I say this most respectfully, that is not entirely an

1  accurate summary of the Court's findings with respect to
2  co-counsel.  And I think that I would refer to the words that
3  are included in that ruling in November 2017 as to the need for
4  co-counsel in this case.
5              The ruling itself is one I would like to refer to for
6  the rationale of having co-counsel, and I incorporate that
7  ruling here by reference.  It's dated November 21, 2017.  And
8  in considering that ruling, one should also consider the
9  proceedings that were held on November 2, November 7, and
10 November 21 of 2017.
11             And while we're on the topic, and since I have the
12 microphone, I would say that the wisdom of that ruling has been
13 proven over and over again in this case since November 21,
14 2017, through, among other things, the many court proceedings
15 that we've had, and the therapeutic attention Mr. El Bahnasawy
16 has received through the efforts of the Federal Defenders, and
17 the excellent sentencing submissions of Mr. Frisch and of
18 Federal Defenders, including their division of responsibility
19 for various aspects of sentencing.
20             So, I would also mention that Federal Defenders
21 started before Mr. Frisch entered into the case, and
22 continuing, I think through today, it's fair to say has
23 provided significant services for Mr. El Bahnasawy, and these
24 have included daily visits by counsel and/or paralegals at MCC,
25 weekly meetings with a licensed social worker, regular meetings

1   with -- these are meetings with Mr. El Bahnasawy.  Regular
2   meetings with Dr. Katherine Porterfield, PhD.  She's a clinical
3   instructor of psychiatry at New York University School of
4   Medicine.  And also with John Mariani, M.D., who is a research
5   psychiatrist at the New York State Psychiatric Institute.
6              It is my understanding that through Federal Defenders
7   an attorney or a representative of their office has visited
8   Mr. El Bahnasawy almost, if not exactly on a daily basis, while
9   he's been in BOP custody since May of 2016.
10             So, for example, Rachelle Veasley, who is a social
11  worker, says in a letter to the Court that she worked with
12  Mr. El Bahnasawy since July 2016, and met with him weekly ever
13  since.  From the outset she led efforts to maintain his level
14  of functioning, coordinating the effort with the entire legal
15  team, both attorneys and three paralegals, took turns visiting
16  to meet our goal of daily three-hour meetings, even on
17  weekends.
18             The third point I would like to cover is this:
19  Defense counsel Frisch has requested that the Court, in
20  connection with Mr. El Bahnasawy's sentencing, recommend to the
21  United States Department of Justice, and particularly I believe
22  he's referring to the Office of International Affairs, that the
23  Court consent to an application that defense expects to make,
24  the defendant expects to make, pursuant to the International
25  Transfer of Offenders Act.  And attaching, and we will make a

1   copy available as Court Exhibit A to today's transcript which
2   describes how that program works.
3           According to the Department of Justice, the United
4   States has bilateral treaties with countries, including Canada,
5   and is a party to two multilateral conventions, the Council of
6   Europe Convention On the Transfer of Sentenced Persons, and the
7   Inter-American Convention on Serving Criminal Sentences Abroad.
8   Applications for prisoners seeking transfer to or from Canada
9   are normally processed under the COE Convention.  That's the
10  first of the two that I mentioned.  And the primary objective
11  of the international prisoner transfer program is to facilitate
12  the rehabilitation of the prisoner toward becoming a more
13  productive member of society in his home country upon release
14  from incarceration.
15          Anyway, I've just been reading up on these materials
16  myself, and as I say, will make a copy of them as an attachment
17  to today's proceeding.
18          Mr. El Bahnasawy, as I mentioned before, I believe is
19  a Canadian citizen, and his family all live in Canada, and they
20  believe that he can be helped with his serious and
21  long-standing mental health issues and with respect to his
22  long-standing drug addictions if he serves his sentence in that
23  country.
24          Subject to my review of any such application by the
25  defense, the Court has no conceptual objection to invoking the

1  act, assuming, of course, the application is in conformity with
2  the act's provisions, which I'm sure it would be.  And indeed,
3  the Court perceives that Mr. El Bahnasawy's transfer to Canada
4  at some point to serve his sentence may very well be in the
5  interest of justice.
6        The fourth point I would like to cover relates to a
7  declaration that is included with Mr. Frisch's sentencing
8  submission.  It's one by Todd Bussert, and it's dated March 1,
9  2018.  It's very helpful, and I've not quite seen a submission
10 like that before at sentencings.  Very useful.
11       So Mr. Bussert appears to be an expert in the federal
12 bureau of prisons designations, among other things.  He's very
13 well researched in his declaration, and states, among other
14 things, that approximately 30 percent of federal inmates are
15 designated medium security, and that BOP facilities are also
16 given mental health care level ratings.  That is to say, their
17 expertise in dealing with various degrees of mental health
18 care.  Those ratings go from one to four.  Three and four offer
19 the most extensive treatment resources.
20       He also points out that 4.2 percent of federal inmates
21 are considered to be suffering from a serious mental illness,
22 4.2 percent, and that the level one, which is the lowest level
23 of care, is offered to 95 percent of prisoners, and that --
24 this is Mr. Bussert talking -- Mr. El Bahnasawy would not
25 qualify for mental health level three or four from what he

1   knows of the history of this case and of his expertise about
2   bureau of prisons facilities.
3           Mr. Bussert says that, although not binding, judicial
4   recommendations do play an important role in the BOP's
5   designation determinations, and it is often useful for a Court
6   to make a very specific statement concerning the reasons for a
7   recommended location or program, and to recommend more than one
8   placement option to facilitate its intended purposes.
9           According to Mr. Bussert, Mr. El Bahnasawy will likely
10  be treated mental health wise through what he describes as the
11  monitored administration of psychotropic medications.  Mr. El
12  Bahnasawy was classified for mental health purposes as level
13  two at the MCC where he has been since May 2016.
14          Also, according to Mr. Bussert, Mr. El Bahnasawy will
15  likely not receive intensive treatment for his documented
16  substance abuse issues, and also he says that the BOP will be
17  best able to manage Mr. El Bahnasawy's mental health issues if
18  provided with relevant reports and records.  This is
19  principally a task for defense counsel.  Experience, as
20  confirmed by bureau officials with whom Mr. Bussert has
21  interacted, demonstrates that the agency welcomes, if not
22  prefers, to receive such material via the eDesignate system,
23  that is the electronic system through which U.S. probation
24  transmits documents to the bureau of prisons.  So if counsel
25  provides the materials to probation, if possible, he suggests

1    that they do so as a PDF, they can be transmitted then to the

2    BOP in conjunction with the designation process, allowing

3    officials to account for Mr. El Bahnasawy's needs based on

4    information not contained in the MCC records or the presentence

5    investigation report.

6    　　　　　By letter dated March 22, 2018, Mr. Frisch states

7    that, and presumably has done so in connection with

8    consultation with Mr. Bussert, we have refined the proposed

9    language of our requested recommendation for BOP designation as

10   follows:  The Court recommends that the defendant be designated

11   to FCI Butner-medium to facilitate greater proximity to mental

12   health services.

13   　　　　　It goes on to say that to the extent BOP finds that

14   the defendant should be housed at a mental health care level

15   two facility, the Court recommends FCI McKean-medium or FCI

16   Schuylkill-medium, those are both located in Pennsylvania, in

17   order to facilitate regular visitation with Mr. El Bahnasawy's

18   parents and sister who live in Canada.

19   　　　　　The Court strongly recommends that the defendant --

20   this is language suggested by Mr. Frisch -- the Court strongly

21   recommends the defendant not be housed at a contract facility

22   for non-U.S. citizens, given both his age and mental health

23   condition.  And finally, that the Court also recommends that

24   the defendant participate in intensive substance abuse

25   treatment.

1          I do intend to include this language in my sentencing
2  judgment, if that is what defense counsel are seeking at the
3  time of sentencing.
4          And then the last point I'll make for today, and I'm
5  happy to hear from defense counsel or government counsel if
6  they wish to be heard on any of these topics, otherwise we'll
7  adjourn to Tuesday.  The last point is that, defense counsel
8  have requested that Mr. El Bahnasawy continue to be housed
9  following his sentencing at MCC for a period of six months.
10         In this regard, I would request that counsel consult
11 with MCC counsel Adam Johnson of the BOP, and then submit a
12 recommendation to me with respect to housing of Mr. El
13 Bahnasawy for my consideration following sentencing.  I have no
14 objection to the recommendation that I believe counsel is
15 making, if counsel and the BOP are in agreement, and if Mr. El
16 Bahnasawy continues to get therapeutic care while awaiting
17 designation to a BOP facility.
18         So, with that background, I am happy to hear from
19 defense counsel if you wish to comment on any of these points.
20         MR. FRISCH:  Your Honor, the only point that I may
21 make, and I'll reserve it until we see your Honor on Tuesday.
22 With regard to the recommendation that Mr. Bussert and I put
23 together in my letter of March 22, we may actually ask the
24 Court to recommend either McKean or Schuylkill as a clear
25 second choice if the bureau of prisons does not see clear to

1    designate Mr. Bahnasawy to Butner. And we'll so advise the
2    Court if your Honor permits on Tuesday.
3             THE COURT: Okay. I trust that you and he are expert
4    enough. I don't know how to fashion a recommendation. I
5    typically approve them if counsel make them. But if that's
6    your recommendation on Tuesday, that's the one I'll make.
7             MR. FRISCH: Mr. Bussert is the expert, and this is
8    the language he recommends, and seemed right to me.
9             THE COURT: That's great. By the way, is the
10   suggestion that Mr. El Bahnasawy stay at MCC for six months
11   everybody's in the defense team?
12            MS. SHROFF: Your Honor, we had asked for that
13   recommendation so that Dr. Porterfield and Dr. Mariani can
14   continue their work with him, as would Ms. Veasley. But if
15   there is a different position we take, we'll let the Court know
16   on Tuesday.
17            While I'm on the topic, your Honor --
18            THE COURT: You would do well to confer with Adam
19   Johnson just to make sure that's their protocol or how you
20   implement that protocol.
21            MS. SHROFF: Certainly, your Honor. I think Judge
22   Preska in the past asked a couple people to be kept at MCC
23   while pursuing either appeals or other issues.
24            Both Dr. Mariani -- actually Dr. Mariani is still
25   present in court today. Dr. Porterfield was present earlier.

1  I want to inquire if they should return on Tuesday in the event
2  the Court has questions for them.
3           THE COURT:  I may.  I don't want to have people do
4  extra work.  I have the submissions which are rather detailed
5  and very helpful.  I don't know if questions will come up
6  beyond what's in the written submissions.
7           MS. SHROFF:  Just so Mr. El Bahnasawy is fully
8  represented we will have Dr. Mariani and Dr. Porterfield return
9  for Tuesday.  Especially since the last submission by the
10 Federal Defenders, Dr. Mariani has in fact visited Mr. El
11 Bahnasawy, as has Ms. Veasley, as has Dr. Porterfield.
12          THE COURT:  If they do come, I will certainly ask them
13 to say a word or two, not just generally speaking, but as to
14 their diagnosis probably would be what I would ask them most
15 about.
16          MS. SHROFF:  Okay.  We'll have them present.  Thank
17 you.
18          THE COURT:  How about the government.  Anything from
19 the government?
20          MR. TURNER:  Your Honor, we don't have any comments on
21 those subjects.  We of course do look forward to being heard on
22 the 3553(a) factors on Tuesday.
23          THE COURT:  This is not intended to be the sentencing,
24 as I thought I made clear at the outset.  And, typically, how
25 the sentencing goes is I will describe what I think are the

salient background facts of the case, and after that description, I'll call on the government and I'll call on the defense, and I'll call on Mr. El Bahnasawy if he wishes to make comment or statement.  So, that all will occur on Tuesday.

All right.  Nice to see you all.  Thanks.

MR. TURNER:  Thank you, your Honor.

(Adjourned)